**Bodie Lee JAYNES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–04–286–CR.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Nov. 22, 2006.

---

Leslie Werner De Soliz, Brown & Associates, Victoria, for appellant.

Michael M. Kelly, Asst. Dist. Atty., M.P. Dexter Eaves, Dist. Atty., Victoria, for state.

Before Justices Yañez, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice GARZA.

A jury convicted appellant, Bodie Lee Jaynes, of aggravated assault with a deadly weapon, *see* TEX. PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(2) (Vernon 2003), enhanced with a finding that he committed the offense because of a bias or prejudice (a "hate-crime finding"). *See* TEX.CODE CRIM. PROC. ANN. art. 42.014 (Vernon Supp. 2006); TEX. PEN.CODE ANN. § 12.47 (Vernon 2003). The trial court assessed punishment at twenty years' imprisonment. By eight issues, appellant contends: (1) he was not provided with a complete reporter's record; (2) the evidence is legally insufficient to support a hate-crime finding; (3) the evidence is factually insufficient to support a hate-crime finding; (4) the trial court erred in admitting evidence of his association with the Aryan Brotherhood and the Ku Klux Klan along with evidence depicting racial and ethnic prejudice because the State failed to give reasonable notice of its intent to use the evidence and because the probative value of the evidence was substantially outweighed by unfair prejudice; (5) he was denied effective assistance of counsel; (6) the evidence was insufficient to disprove self-de-

fense; (7) the evidence was insufficient to disprove mutual combat; and (8) the trial court erred in failing to submit a jury instruction on mutual combat. We affirm.

## I. Factual and Procedural Background

On or about August 9, 2003, Zachary Jones, an African American, accompanied Amanda Johnson to Fanelli's, a bar in Victoria, Texas. Appellant, who is Anglo, was also at Fanelli's and was accompanied by two females. At some point during the evening, Jones overheard appellant and one of his female companions making racist comments. Jones approached appellant to question the comments; shortly thereafter, appellant and Jones engaged in an altercation outside of Fanelli's. Testimony of appellant and Jones, along with the testimony of other witnesses, revealed that appellant used a knife to cut Jones during the altercation. Testimony also revealed that Jones used his belt during the fight, allegedly to disarm appellant, and that Jones struck appellant in the head with the belt buckle. Appellant, Jones, Amanda Johnson, and other witnesses testified that appellant directed racial comments to Jones before, during, and after the altercation. Monica Sanchez's testimony also revealed that appellant called her a "nigger lover" and "dead bitch" after she informed appellant that the police were on their way. Jones filed a complaint with the Victoria Police Department. After an investigation, Detective Tom Copeland filed a report with the district attorney's office naming appellant as the suspect. Appellant was charged with aggravated assault with a deadly weapon, enhanced by a hate-crime allegation. A jury found appellant guilty of the offense and found that

appellant selected Jones because of a bias or prejudice against Jones. The trial court sentenced appellant to twenty years' imprisonment. Appellant filed a motion for directed verdict and a motion for new trial; both motions were denied. This appeal ensued.

## II. The Record

■ On June 16, 2005, appellant filed a motion to abate with this Court, complaining about the completeness and accuracy of the reporter's record.[1] Appellant identified ten separate instances in the reporter's record where the court reporter noted that she was having trouble transcribing because (1) the proceedings are going "extremely fast with no intervention from Judge Pat Kelly," (2) "defense attorney and witness are again going extremely fast and talking over each other with still no intervention from Judge Pat Kelly," (3) statements are "Indiscernible," and (4) statements are "Inaudible." Appellant stated he was concerned about the accuracy of the transcription because he "cannot be sure that all the testimony was transcribed or that the testimony that was transcribed was accurate."

On January 19, 2006, this Court granted the motion, abated the appeal, and ordered the trial court to conduct a hearing to determine whether the reporter's record was complete and accurate. *See* Tex. R.App. P. 34.6(e)(3) (setting out the procedure to be followed when a party challenges the accuracy of the reporter's record after it has been filed in the appellate court). The trial court held a hearing on March 15, 2006, and found that the reporter's record was complete and accurate.

---

1. Appellant claimed the reporter's record was incomplete because it did not include (1) two tape recordings played before the jury and admitted into evidence, and (2) the closing arguments of both the State and appellant's trial counsel. However, on September 20, 2005, the reporter's record was supplemented with the omitted items. Accordingly, we will only address appellant's contention as it relates to the accuracy of the reporter's record.

The trial court entered findings of fact and a conclusion of law in support of its ruling.

By his first issue, appellant challenges findings 4, 5, 6, and 8. The complained-of findings are as follows: (4) "No items sought to be included in the reporter's record have been lost or destroyed," (5) "No items need be reproduced or substituted into the trial record," (6) "The text of the reporter's record of the trial accurately discloses what occurred in the trial court," and (8) "There are no items missing from the record." Appellant also challenges the trial court's conclusion of law, that "[t]he presentment of exhibits together with the reporter's record is an accurate and full record of the proceedings in this cause against the Appellant, Bodie Lee Jaynes." Appellant argues that because the aforementioned findings of fact are based on factually insufficient evidence, the conclusion of law based on the factual findings is erroneous.

We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim.App.2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Villarreal v. State*, 61 S.W.3d 673, 678 (Tex. App.-Corpus Christi 2001, pet. ref'd).

At the abatement hearing, the court reporter, Linda Rubio Miller, testified that the record was complete and accurate. She testified that she reviewed each of the ten complained-of areas and that all testimony was recorded. On cross-examination, Miller testified that she was able to determine that the testimony that she transcribed was complete and accurate by listening to the audio tapes of the testimony "over and over." The only contradicting evidence relied on by appellant is appellant's contention that the trial transcript belies Miller's testimony and that if Miller can be "incorrect about her recollection of the law [relating to a reporter's duty to transcribe closing arguments], then she could just as likely be incorrect about the accuracy of the record. . . ."

Appellant's contention regarding the completeness of the record depends upon facts that were resolved by the trial court against appellant's position. After reviewing the record, we find that the evidence is sufficient to support the trial court's factual rendition. Although appellant introduced conflicting evidence, the trial court could have found that evidence to not be credible. *See Lamb v. State*, 680 S.W.2d 11, 15 (Tex.Crim.App.1984). Giving almost total deference to a trial court's resolution of the historical facts, *see Guzman*, 955 S.W.2d at 89, we conclude the trial court correctly ruled that the text of the reporter's record of the trial accurately discloses what occurred in the trial court. Appellant's first issue is overruled.[2]

### III. LEGAL AND FACTUAL SUFFICIENCY

■ By his second and third issues, appellant contends the evidence is legally and factually insufficient to support the jury's affirmative finding that he intentionally selected Jones because of his bias or prejudice against Jones' race. *See* TEX.CODE CRIM. PROC. ANN. art. 42.014; TEX. PEN.CODE ANN. § 12.47.[3] Specifically, appellant con-

---

2. Because we find that factually sufficient evidence to support the trial court's findings of fact exists, we need not address appellant's contention that the conclusion of law based thereon is erroneous. *See* TEX.R.APP. P. 47.1. Nonetheless, whether the record is complete is an issue of fact and not an issue of law.

3. The jury was instructed, "Do you the Jury find from the evidence beyond a reasonable doubt that the defendant intentionally selected the person against whom the offense was committed because of the defendant's bias or prejudice against the said Zachary Jones?"

tends the evidence established that Jones instigated the fight and that there is therefore no evidence that he "selected" Jones because of a bias or prejudice.

■ The court's legal sufficiency review of a punishment enhancement issue for which the prosecution bears the burden of proof is to be conducted under a *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard. This Court views the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the punishment enhancement issue in question beyond a reasonable doubt. *See id.; Barnes v. State*, 876 S.W.2d 316, 322 (Tex.Crim.App.1994); *Martinez v. State*, 980 S.W.2d 662, 664 (Tex.App.-San Antonio 1998, pet. ref'd). This standard of review applies to both direct and circumstantial evidence cases. *Green v. State*, 840 S.W.2d 394, 401 (Tex. Crim.App.1992).

In reviewing the factual sufficiency of the evidence in a criminal case, this Court must examine all of the evidence and "set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis v. State*, 922 S.W.2d 126, 134–35 (Tex. Crim.App.1996). Factual sufficiency review begins with the presumption that the evidence supporting the jury's verdict was legally sufficient. *Id.* Extending *Clewis* to a factual sufficiency challenge on a punishment enhancement, this Court reviews all of the evidence pertaining to the punishment enhancement and will set aside the enhancement only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See id.* (extending standard of review to all points in which the State bears the burden of proof). In conducting a factual sufficiency review, this Court must discuss the evidence that appellant contends most undermines the jury's verdict. *See Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

Under either standard, the fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex.Crim.App.2000); *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.App.2000). We must give deference to the fact finder's decisions about the weight and credibility of evidence. *See Johnson*, 23 S.W.3d at 9. Although appellant contests the admissibility of some of the evidence, we must consider all the evidence in conducting our review, whether properly or improperly admitted. *Moff v. State*, 131 S.W.3d 485, 488 (Tex.Crim. App.2004).

■ The Texas Hate Crimes Act is codified in article 42.014 of the Texas Code of Criminal Procedure and section 12.47 of the Texas Penal Code. *See* TEX.CODE CRIM. PROC. ANN. art. 42.014; TEX. PEN.CODE ANN. § 12.47. The Hate Crimes Act provides that in a trial of specified offenses, the judge shall make an affirmative finding of fact and enter such finding in the judgment of the case if, at the guilt or innocence phase of the trial, the trier of fact, whether judge or jury, determines beyond a reasonable doubt that the defendant intentionally selected the person against whom the offense was committed, or intentionally selected property damaged or affected as a result of the offense, because of the defendant's bias or prejudice against a group identified by race, color, disability, religion, national origin or ancestry, age, gender, or sexual preference. TEX.CODE CRIM. PROC. ANN. art. 42.014(a). If an affirmative finding is made under the Hate Crimes Act in the trial of an offense other than a first degree felony or a class A misdemeanor, the punishment for the offense is increased to the punishment prescribed for the next highest category of

offense. *See id.;* TEX. PEN.CODE ANN. § 12.47; *see also Martinez*, 980 S.W.2d at 666 (citing *Sterry v. State*, 959 S.W.2d 249, 255 (Tex.App.-Dallas 1997, no pet.)). Punishment enhancement under the Texas Hate Crimes Act may be based on circumstantial evidence of the defendant's bias or prejudicial motive, including previous racial epithets directed at the victim, provided, however, the circumstantial evidence must be relevant and reliable to prevent enhancement of punishment for crimes committed by a person who entertains a bias or prejudice, but whose bias was not the primary motivation for the criminal conduct. *See Martinez*, 980 S.W.2d at 667.

■ In the present case, at the guilt-innocence phase of trial, the jury found that appellant intentionally selected Jones because of his bias or prejudice against Jones' race. At the conclusion of the punishment phase of trial, the trial judge entered the following finding:

> Mr. Jaynes, as the Defendant in this case, the Court, based upon the evidence presented and the verdict of the jury, finds that you are guilty of aggravated assault with a deadly weapon, and the Court further finds that you selected the victim because of your bias or prejudice towards the person, to-wit: Zachary Jones, in violation of Article 42.014 of the Texas Code of Criminal Procedure and Section 12.47 of the Texas Penal Code, which results in an enhancement of the crime to a First Degree Felony.

The enhancement statute specifically requires that the defendant intentionally select the victim "primarily because of the defendant's bias or prejudice." *See* TEX. CODE CRIM. PROC. ANN. art. 42.014; *Martinez*, 980 S.W.2d at 666–67. The term "because of" connotes a causal link. Thus, the State must prove a casual link between the crime and the proven bias or prejudice. *Martinez*, 980 S.W.2d at 667 (citations omitted). By requiring the State to prove a causal link, the statutes prevent prosecution of offenses committed by a person who entertains bias or prejudice but whose bias or prejudice was not a primary motivating factor in the offense charged. *Id.* Accordingly, in the present case, the State had to prove a causal connection between the infliction of injury and appellant's bias or prejudice to assess punishment enhancement under the Hate Crimes statutes. *See id.;* TEX.CODE CRIM. PROC. ANN. § 42.014(a); TEX. PEN.CODE ANN. § 12.47.

Jones testified that the encounter began when he heard one of appellant's female companions say "[t]hat nigger keeps looking at you." Jones testified he heard appellant say, in a raised voice, "I'll throw this bottle and hit that nigger in his face." Jones stated that he walked over to appellant and "reproached" him because "it was disrespectful for him to say something like that about me and he don't even know me." Jones testified that he asked appellant what he had said, and appellant responded, "You heard me nigger. I'll hit you in the face with this bottle." Jones testified that he did not remember why he and appellant went outside or whose idea it was to go outside. Jones also testified that appellant removed his shirt when they were outside, revealing a Nazi Swastika tattoo on his stomach. Jones testified that appellant kept saying, "[y]ou know what I represent. You know what I represent nigger" and "[n]igger, I'm going to kill you" and kept calling him a "nigger."

On cross-examination, Jones reiterated that he heard one of appellant's female companions say, "[t]hat nigger keeps looking at you" and that he heard appellant state to one of the women, "I've been around niggers twelve years" and "I'll throw this bottle and hit that nigger in his face." He testified that although appellant and the women may have been having a

conversation amongst themselves, "they said it about me loud enough to where I could hear it; so, I went [up to appellant] and I commented on it." Jones testified that he was the only African American at Fanelli's that evening. He explained that he felt he needed to go over to appellant and "correct" the comments because appellant disrespected him. He testified that he went up to appellant in a "rational" manner and did not act outrageously or make any derogatory comments to appellant. Jones testified that he did not intend to fight appellant, but only wanted to talk to him. Jones stated that he did not return to his seat after speaking to appellant because he was upset and he and appellant both wanted to go outside and fight. Jones adamantly testified that he did not remember asking appellant to go outside. He testified that appellant stood up and started walking toward the door and he followed, but managed to walk out ahead of appellant, and explained he did not know how "but me and him went outside." Jones denied making or using racial or derogatory terms while fighting with appellant; however, he did admit to telling appellant, "[f]uck you."

Detective Tom Copeland of the Victoria Police Department testified that he spoke to appellant and informed him that Jones had filed an aggravated assault complaint against him and that appellant became angry and responded, "[t]hat nigger pissed me off." He testified that he filed the complaint with the district attorney's office and also obtained a search warrant for appellant's home. Copeland testified that he and the other officers who searched the home found items that would lead one to believe that appellant belonged to a white supremacy organization. Specifically, they found t-shirts with white-supremacist-type slogans on them, pictures, photographs, a German cross, Rebel flag, and order forms for white-supremacist-type items.

Monica Sanchez, a manager at Fanelli's who was working on the night of the incident, testified that she observed the altercation between appellant and Jones when she returned from her lunch break. She testified that as Jones started to walk away from the fight appellant kept calling Jones a "nigger," yelling "white pride," and spitting on Jones. She testified that she told appellant and Jones to leave and told appellant that the police were on their way. Appellant responded by calling her a "nigger lover" and a "dead bitch."

Amanda Johnson, who was at Fanelli's with Jones when the fight took place, testified that Jones had gone outside to retrieve cigarettes from the car and that when he returned he told her that appellant said something to him about "that nigger better stop looking at my girl." She testified that she observed appellant and Jones fighting outside and that appellant was saying, "come on you nigger." She testified that she saw a Swastika tattoo on appellant's stomach. On cross-examination, Johnson testified that Jones did not like being called a "nigger." She also testified that Jones was leading when he and appellant were going outside.

Nicole Borst, the bartender on duty that evening, testified that she was informed by a customer that two people were fighting. Borst testified she saw a black male and a white male, whom she identified as appellant and Jones, fighting and that she observed a knife in appellant's hand and observed appellant waving the knife around threatening Jones. She testified that she did not observe Jones with anything in his hands. She also testified that she noticed appellant was calling Jones a "bitch" and "nigger" and that appellant had a Swastika tattoo on his stomach.

Appellant testified that, on the night in question, he and Jones unintentionally

bumped shoulders near the juke box. Jones allegedly told him to "watch it" and appellant responded, "you watch it nigger." He testified that he kept his eye on Jones as Jones walked back to where Amanda Johnson was sitting. Appellant testified that Jones came back up to him and told him, "let's go outside white boy." He testified that he figured Jones wanted to fight and that he willingly went outside. He testified they got in each other's face, cussed at each other, and that he pushed Jones' face with his hand. Appellant acknowledged that he bit Jones and cut him with his pocket knife. Appellant testified that he realized that calling Jones a "nigger" was insulting and also realized that they got into a fight because he called Jones a "nigger." However, he explained that he would not have fought with Jones if Jones had not come over and suggested that they go outside. Appellant further testified that he formed his dislike for black people while he was in prison and that he associated with white supremacists in prison. He testified that he was not a full member of the white supremacist group, but was a prospect. Appellant also testified that he lied to Detective Copeland when he told him he did not use derogatory or racial terms. Appellant admitted that he called Jones a "nigger" and that he did use both racial and derogatory terms because he has "certain beliefs and issues with certain black people." On cross-examination, appellant admitted to owning white-supremacist-type items and testified that he may have called Sanchez a "nigger lover," yelled out "white power," and spit on Jones. On re-direct examination, he insisted that he did not select Jones, but that Jones chose him.

Although there is no direct evidence that appellant "selected" Jones as a victim because of Jones' race, the record indicates that appellant (1) provoked Jones by directing racial comments, (2) threatened Jones by stating, "[y]ou heard me nigger. I'll hit you in the face with this bottle," (3) used racial slurs before, during, and after the assault, and (4) called people who came to Jones' aid "nigger lovers" and "dead bitch." Viewing the evidence in the light most favorable to the finding, we conclude a rational trier of fact could have found that appellant's bias or prejudice against African Americans was the primary motivating factor for his conduct and that he therefore selected Jones as a victim primarily because of his bias or prejudice against Jones' race. African American. *See Martinez*, 980 S.W.2d at 667. Accordingly, we find the evidence is legally sufficient to support the jury's finding of a causal connection between the infliction of injury and appellant's bias or prejudice.

Further, considering all of the evidence in a neutral light, we find that the jury was justified in finding appellant selected Jones. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). We must defer to the jury's determination of the credibility of the witnesses. *Johnson*, 23 S.W.3d at 7. We cannot say that the evidence is not factually sufficient because the jury resolved the conflicting views of the evidence in favor of the State. *Cain v. State*, 958 S.W.2d 404, 410 (Tex.Crim.App.1997). Further, the evidence supporting the finding of guilt is not too weak to support the finding beyond a reasonable doubt. *See Zuniga*, 144 S.W.3d at 484–85. Accordingly, we find that the evidence is factually sufficient to support the jury's finding. Appellant's second and third issues are overruled.

## IV. EXTRANEOUS CONDUCT

█ In his fourth issue, appellant contends that the trial court erred in admitting evidence of his association with the Aryan Brotherhood and the Ku Klux Klan along with evidence depicting racial and

ethnic prejudice. We review a trial court's decision to admit evidence of extraneous offenses under an abuse of discretion standard. *Page v. State,* 137 S.W.3d 75, 78 (Tex.Crim.App.2004).

In particular, he complains about the admission of the following exhibits offered by the State:

Exhibit 18: A picture of a framed Ku Klux Klan poster with the saying "Save our land, Join the Klan"

Exhibit 19: A picture of a page from a catalog selling white-supremacist-type insignias and Nazi slogans

Exhibit 20: A picture of a Ku Klux Klan t-shirt depicting a hooded Ku Klux Klan member with the words "The Original Boys in the Hood"

Exhibit 23: A picture of a Rebel flag picture frame

Exhibit 24: A picture of an envelope with a Rebel flag drawn on it

Exhibit 26: Pictures of pages out of a catalog containing white-supremacist-type insignias and Nazi slogans

Exhibit 27: A picture of a Rebel flag

Exhibit 28: A picture of a German cross patch and a Rebel flag patch

Appellant contends the trial court erred in admitting the evidence because the State did not give appellant reasonable notice of its intent to use this evidence as required by rule 404(b) of the rules of evidence. *See* Tex.R. Evid. 404(b). Rule 404(b) requires the State to give the defendant, upon timely request of the accused, notice of its intent to use evidence of defendant's other crimes, wrongs, or acts. *See id.* Appellant filed a motion requesting disclosure of 404(b) evidence. The State responded that it intended to use two prior misdemeanor convictions. However, on the first day of trial, the State provided appellant with notice that it also intended to use evidence that appellant is a

member of the Aryan Brotherhood and the Ku Klux Klan. Appellant objected to the admission of the evidence contending that he did not receive timely notice.

■ Appellant has not explained how the status of being a member or being associated with these groups constitutes "evidence of other crimes, wrongs, or acts." *See* Tex.R. Evid. 404(b). Appellant's status as a member of the Aryan Brotherhood and the Ku Klux Klan is not evidence of a crime, wrong, or act as contemplated by rule 404(b). *Cf. Pondexter v. State,* 942 S.W.2d 577, 583–84 (Tex.Crim. App.1996) (record contained evidence of the violent activities of the gang and of the defendant's approval of and participation in those activities); *see also Merrit v. State,* No. 05–96–01619–CR, 1998 WL 378497, 1998 Tex.App. LEXIS 4100 (Tex. App.-Dallas July 9, 1998, no pet.) (not designated for publication) (citing *Pondexter* and explaining that the court of criminal appeals has never held that mere gang affiliation, without any evidence of the character of the gang or of the defendant's actions with the gang or approval of the gang's illegal activities constitutes evidence of other crimes, wrongs, or acts and holding that rule 404(b)'s notice requirements did not apply). We conclude that rule 404(b)'s notice requirements do not apply to this case. Accordingly, we hold that, even though the State gave notice to appellant of its intent to use the complained-of evidence, appellant was not entitled to receive notice and thus, the trial court did not err in admitting the evidence. We overrule appellant's fourth issue as it relates to the untimely notice complaint.

As a sub-argument, appellant contends the trial court erred in admitting the complained-of evidence under rule 403 because the probative value of the evidence was substantially outweighed by unfair prejudice. Rule 403 provides that "although

relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX.R. EVID. 403. We review the admission of evidence under an abuse of discretion standard. *Wyatt v. State*, 23 S.W.3d 18, 29 (Tex.Crim.App.2000).

On March 29, 2004, the first day of trial, appellant filed a motion in limine seeking to exclude the complained-of evidence. At the conclusion of the second day of trial, the trial court, outside the presence of the jury, held what we construe to be a hearing on appellant's motion in limine.[4] At the hearing, appellant objected to the admission of the complained-of evidence, contending that the probative value was outweighed by the prejudicial value. *See* TEX.R. EVID. 403. The State responded that the exhibits were highly probative in that they tended to show appellant's biases and prejudices both of which are elements in the case. The trial court overruled the objection and admitted the evidence. The exhibits were later introduced during the testimony of Detective Copeland. Appellant did not re-urge his objection to the admission of the exhibits under rule 403 grounds; instead, he re-urged his objection to the admission of the exhibits under rule 404(b) on timely notice grounds. *See* TEX.R. EVID. 404(b).

 It is a well-settled principle that to preserve error for review on appeal, a defendant must object timely, specifically, and receive an adverse ruling at trial. TEX.R.APP. P. 33.1(a); *Turner v. State*, 805 S.W.2d 423, 431 (Tex.Crim.App.1991).

The objecting party must continue to object each time the objectionable evidence is offered. *Fuentes v. State*, 991 S.W.2d 267, 273 (Tex.Crim.App.1999); *Ethington v. State*, 819 S.W.2d 854, 858–59 (Tex.Crim. App.1991). A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex.Crim.App.1998). This rule applies whether the other evidence was introduced by the defendant or the State. *Id.* Further, motions in limine do not preserve error. *See Webb v. State*, 760 S.W.2d 263, 275 (Tex.Crim.App.1988). This is true whether the motion is granted or denied. *Willis v. State*, 785 S.W.2d 378, 384 (Tex.Crim.App.1989); *Webb*, 760 S.W.2d at 275. Appellant has not properly preserved error because he did not renew his rule 403 objection during Detective Copeland's testimony regarding the complained-of exhibits. Therefore, we overrule appellant's fourth issue as it relates to the rule 403 complaint.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

 In his fifth issue, appellant claims that his trial counsel was ineffective for failing to object to the State's indictment. Appellant argues that the indictment is defective because the enhancement paragraph "failed to allege that [appellant] had a bias or prejudice against African Americans and that [appellant] selected Jones because Jones was an African–American."[5] We disagree.

---

4. The record reflects that at the conclusion of the second day of trial, appellant's trial counsel renewed his rule 404 objection. The trial court asked, "Which 404 objections to this?" Counsel replied, "The Motion in Limine." The trial court then recessed the jury overnight and proceeded to address counsel's motion in limine.

5. Appellant's challenge to the indictment is based on his contention that the State must set forth in the indictment every element of a crime or an enhancement that must be proved. He argues that one element of the "bias" enhancement is that the defendant intentionally selected the person against whom the offense was committed because of the defendant's prejudice against an identifiable

This Court uses the two-pronged *Strickland* test to determine whether representation was so inadequate that it violated a defendant's Sixth Amendment right to counsel. *See Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (recognizing the Sixth Amendment right to counsel); *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App. 1986); *Alfano v. State,* 780 S.W.2d 494, 495 (Tex.App.-Corpus Christi 1989, no pet.). To establish ineffective assistance of counsel, appellant must show (1) his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55. Whether this test has been met is to be judged on appeal by the totality of the representation, not by isolated acts or omissions. *Rodriguez v. State,* 899 S.W.2d 658, 665 (Tex.Crim.App.1995). Isolated failures to object generally do not constitute error in light of the sufficiency of the overall representation. *Johnson v. State,* 691 S.W.2d 619, 627 (Tex.Crim.App.1984).

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence. *Munoz v. State,* 24 S.W.3d 427, 434 (Tex.App.-Corpus Christi 2000, no pet.). Our review of counsel's representation is highly deferential. Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *Munoz,* 24 S.W.3d at 434. Also, the acts or omissions that form the basis of appellant's claim of ineffective assistance must be evidenced by the record. *See Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999). In most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Mallett v. State,* 65 S.W.3d 59, 63 (Tex.Crim.App.2001); *Thompson,* 9 S.W.3d at 813–14.

The enhancement paragraph in the indictment read as follows:

And it is further presented in and to said Court that the Defendant intentionally selected the said ZACHARY JONES as the victim primarily because of the Defendant's bias or prejudice against the said ZACHARY JONES.

The indictment stated appellant intentionally selected Jones due to appellant's bias or prejudice against Jones. The indictment follows, almost verbatim, the Hate Crimes Statute, but it does limit the recognized group from "race" to a specific individual, Jones, whom appellant knew to be African American and whose race is explicitly recognized by the statute. *See* Tex. Code Crim. Proc. Ann. art. 42.014; *Martinez v. State,* 980 S.W.2d 662, 668 (Tex. App.-San Antonio 1998, pet. ref'd) (stating "[b]ased on a clear reading of article 42.014 and a study of the legislative intent behind the Texas Hate Crimes Act, we hold that the hate-crime punishment enhancement may be assessed when the assailant acted because of the victim's perceived race or color."); *see also Carroll v. State,* No. 04–05–00150–CR, 2006 WL 1539406, at *3, 2006 Tex.App. LEXIS 4830, at *9 (Tex.App.-San Antonio June 7, 2006, no pet.) (not designated for publication) (finding no abuse of discretion in rejecting defendant's claim that the indictment failed to place defendant on notice of the charge against him because the indictment stated that defendant intentionally selected the victim due to defendant's bias and prejudice against a group identified by na-

protected group. *See* Tex.Code Crim. Proc. Ann. art. 42.014 (Vernon Supp.2006).

tional origin and ancestry to which the victim belonged, and the victim's group was explicitly recognized under the hate crime statute.). Accordingly, we hold the indictment, taken together with appellant's knowledge of Jones' race, sufficiently alleged appellant had a bias or prejudice against Jones because of his race. Thus, the indictment is not defective.

Given the standard of review for effectiveness of counsel, and our conclusion that the indictment is not defective, appellant has not met his burden to prove that trial counsel's representation fell below an objective standard of reasonableness. Other than appellant's contention that "[i]t was unreasonable for trial counsel not to object. . . ." the record does not support appellant's contention that trial counsel failed to provide effective assistance.

Further, appellant did not file a motion for new trial on ineffective assistance of counsel grounds; thus, the record provides no explanation of the motivation behind counsel's decision not to object. Because the record is silent, we cannot conclude appellant has overcome the presumption that counsel's assistance was reasonable. *Mallett*, 65 S.W.3d at 67. Appellant's fifth issue is overruled.

## VI. SELF DEFENSE

■ In his sixth issue, appellant contends the evidence is factually insufficient to support his conviction of aggravated assault with a deadly weapon because the State failed to disprove that he acted in self-defense. *See* TEX. PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(2). In support of his argument, appellant relies on his own testimony that Jones instigated the fight and argues that because Jones was the aggressor, he was merely defending himself. We disagree.

Self-defense serves as a justification, excluding criminal responsibility, for oth-erwise criminal behavior. TEX. PEN.CODE ANN. § 9.31 (Vernon 2003). A person is justified in using deadly force against another when and to the degree he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force, if a reasonable person in the actor's situation would not have retreated, and when and to the degree that he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, or to prevent the other's imminent commission of aggravated kidnaping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. TEX. PEN.CODE ANN. § 9.32(a) (Vernon 2003).

■ When a defendant challenges the factual sufficiency of the rejection of a defense, the reviewing court reviews all of the evidence in a neutral light and asks whether the State's evidence taken alone is too weak to support the finding of guilt and whether the proof of guilt, although adequate if taken alone, is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex.Crim.App.2003) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000)). In conducting these reviews, we bear in mind that the fact finder may draw reasonable inferences, is the sole judge of the weight of the evidence and credibility of the witnesses, and may accept or reject any or all of the evidence produced by the parties. *Swearingen v. State*, 101 S.W.3d 89, 97 (Tex.Crim.App.2003); *Johnson v. State*, 959 S.W.2d 284, 287 (Tex.App.-Dallas 1997, pet. ref'd).

■ The State is not required to affirmatively produce evidence to refute a defendant's self-defense claim; it must prove its case beyond a reasonable doubt.

*See Saxton v. State,* 804 S.W.2d 910, 914 (Tex.Crim.App.1991). Self-defense is an issue of fact to be determined by the fact finder. *See id.* at 913. A guilty verdict is an implicit finding rejecting a defendant's self-defense theory. *See id.* at 914. In order for the State to prove that appellant committed aggravated assault with a deadly weapon, it had to prove, beyond a reasonable doubt, that he used or exhibited a deadly weapon to intentionally, knowingly, or recklessly cause bodily injury to Jones. TEX. PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(2).

Here, the record contains conflicting evidence regarding the circumstances and events surrounding the dispute between appellant and Jones. The following evidence, relevant to appellant's claim of self-defense, was presented to the jury.

Jones testified that he heard appellant make racial comments and that he approached appellant to ask him what he had said. Appellant told him, "You heard me nigger. I'll hit you in the face with this bottle." He testified he did not know why he and appellant walked outside or whose idea it was to go outside. He testified that as he walked outside, he looked back and saw appellant pull out a knife. Jones took his shirt off to use it to try to disarm appellant. Appellant then removed his shirt and proceeded to argue, curse, and push Jones in the face. Jones then punched appellant. Jones testified that appellant swung the knife at him and that he backed up but appellant managed to punch him under his eye. Appellant then jumped at Jones and managed to cut Jones' arm. Jones then removed his belt, wrapped it around his hand, and began swinging it to try to pull the knife away from appellant; however, appellant managed to somehow grab the belt away from Jones. As appellant pulled the belt from Jones, Jones managed to punch appellant, causing him to drop both the knife and the belt. He testified that they proceeded to fight "hand to hand" and eventually ended up fighting on the ground.

On cross-examination, Jones testified that he did not go over to appellant with the intention of fighting and that he only wanted to talk. He again stated he did not remember asking appellant to go outside, but that they both wanted to go outside. Jones testified that appellant stood up and started walking toward the door and he followed, eventually going out ahead of appellant. He testified that after he disarmed appellant of the knife and belt, appellant picked the belt up and swung it at him. Jones testified that the fight ended after he punched appellant in the face and knocked him to the ground. Jones then got into the car and left the scene.

Appellant testified that Jones came up to him and asked him to go outside. He testified that he did not retreat from the fight because there was no place to go, "there were cars parked there, buildings. There was no place to go." On cross-examination, appellant testified that he cut Jones because Jones swung a belt at him.

Monica Sanchez testified that she went up to appellant and Jones and told them to leave. She said that when she did this, appellant and Jones "kind of stepped apart from each other; and they were just kind of yelling at each other." She testified that when she came up to them, Jones told her appellant had stabbed him. She also testified that Jones started to walk away from the fight but appellant kept yelling, "white pride," calling Jones a "nigger" and spitting on Jones, causing Jones to turn around. She testified that appellant had the belt at this point and was swinging it at Jones. Sanchez testified that even as Jones retreated with Amanda Johnson, appellant kept yelling "white pride."

Amanda Johnson and Nicole Borst both testified that appellant held a knife in his hands and swung the knife at Jones. Johnson testified that appellant and Jones rushed each other during the confrontation and that appellant said to Jones, "come on you nigger." Johnson testified that she saw blood on Jones' arm. Borst testified that while appellant was swinging the knife at Jones, Jones "was trying to talk but also stepping back so he didn't get hurt-well, not talking but defending himself while talking." She testified that Jones did not have anything in his hands at this time, but appellant was holding a knife and threatening Jones.

Although appellant contends he was acting in self-defense, evidence that appellant produced a knife early in the confrontation; that although Jones used a belt to defend himself, appellant was able to disarm him; that when Jones attempted to walk away from the fight, appellant did not retreat, but instead continued to provoke Jones; and that appellant cut Jones with a knife, undermined his defense. By returning a verdict of guilty, the jury necessarily resolved any conflicts between the evidence supporting guilt and the evidence undermining guilt in favor of the State. As the sole judge of the witnesses' credibility and weight to give the testimony, the jury was free to do so, and we will not disturb its finding. *See Swearingen*, 101 S.W.3d at 97; *Johnson*, 959 S.W.2d at 287.

Viewed under the proper standard, we conclude the evidence is factually sufficient to support the finding of guilt and the rejection of appellant's self-defense claim. *See Zuliani*, 97 S.W.3d at 594; *see also Gutierrez v. State*, 85 S.W.3d 446, 450–51

**6.** In respect to this issue on appeal, appellant asks this Court to "reverse and render a judgment of acquittal" or, in the alternative, "reverse and remand for a new trial." Appellant's prayer implies a legal sufficiency challenge to the jury's finding on this issue;

(Tex.App.-Austin 2002, pet. ref'd) (holding the jury could reasonably reject defendant's self-defense claim where defendant admitted stabbing victim and victim was not in possession of a weapon, had defensive wounds on hands, and stab wounds in his back). We overrule appellant's sixth issue.[6]

## VII. MUTUAL COMBAT

In his seventh issue, appellant argues the evidence is factually insufficient to support his conviction because the State failed to disprove his defense of mutual combat.

Inherent in appellant's argument is the implied assertion that the jury in this case rejected appellant's mutual combat defense. However, the jury was never instructed on the defensive theory of mutual combat and, thus, was never given the opportunity to find against appellant on the mutual combat issue. Appellant has cited no authority, and we have found none, authorizing a review of the factual sufficiency of the evidence on an issue that was not submitted to the jury. Under these circumstances, we conclude a factual sufficiency review would be improper. We overrule appellant's seventh issue.

## VIII. INSTRUCTION ON MUTUAL COMBAT

 By his eighth issue, appellant complains that the trial court erred in failing to include an instruction on mutual combat. However, the record reflects that appellant's counsel did not request to include the defensive issue in the court's charge and did not object to the lack thereof. A trial court has no duty to *sua*

however, appellant's brief and argument focus solely on the factual sufficiency of the evidence. Accordingly, we will not entertain a legal sufficiency review of the evidence. *See* TEX.R.APP. P. 38.1(h).

*sponte* instruct the jury on a defensive issue, even if raised by the evidence. *Posey v. State*, 966 S.W.2d 57, 61–64 (Tex. Crim.App.1998). Where the trial court is not requested to include a defensive issue in the court's charge to the jury and omits the instruction, the defendant cannot complain for the first time on appeal. *Id.* A defendant's failure to request an instruction on the defense of mutual combat, or object to the lack thereof, waives any complaint on appeal. *See Kinnamon v. State*, 791 S.W.2d 84, 96 (Tex.Crim.App.1990), *overruled on other grounds by Cook v. State*, 884 S.W.2d 485, 491 (Tex.Crim.App. 1994); *Mohammed v. State*, 127 S.W.3d 163, 169 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd).

■ As a sub-argument in his eighth issue, appellant also contends counsel was ineffective for failing to object to the trial court's jury charge because it did not include an instruction on the defense of mutual combat. Assuming, without deciding, that appellant was entitled to a mutual combat jury instruction, the record shows that trial counsel's strategy included the pursuit of the defense of "self-defense." Trial counsel could reasonably have concluded that the jury could have found the mutual combat defense less credible if he proceeded with both mutual combat and self-defense as defense theories, which the jury could perceive as inconsistent. *See Marlow v. State*, 886 S.W.2d 314, 317 (Tex. App.-Houston [1st Dist.] 1994, pet. ref'd) (holding trial counsel may reasonably choose defensive theory of self-defense as only defensive theory, as a matter of trial strategy, even though other defensive theories were available); *cf. Vasquez v. State*, 830 S.W.2d 948, 949–51 (Tex.Crim. App.1992) (finding ineffective assistance of counsel where counsel failed to request instruction on the *only* available defense) (emphasis added).

Because appellant did not file a motion for new trial on ineffective assistance of counsel grounds, and because no testimony was elicited concerning counsel's reasons for not requesting the mutual combat charge, no evidence in the record demonstrates counsel's reasons for his decision. Accordingly, appellant has not rebutted the presumption that his trial counsel's decisions were made in the exercise of reasonable professional judgment and motivated by sound trial strategy. *See Mallett*, 65 S.W.3d at 67; *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Because we are unable to conclude that counsel's performance fell below an objective standard, appellant has failed to satisfy the first prong of *Strickland. Mallett*, 65 S.W.3d at 67. Accordingly, we overrule appellant's eighth issue.

The judgment of the trial court is affirmed.