

# NUMBER 13-07-00723-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ANDREW CANTU,**                                            **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 319th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, Andrew Cantu, was charged with one count of murder and two counts of aggravated assault. *See* TEX. PENAL CODE ANN. §§ 19.02, 21.01, 22.02 (West 2003). Cantu waived his right to a jury trial, and a bench trial was held. The trial court found Cantu guilty on all three counts and sentenced him to life on the murder charge and

twenty years' confinement on each aggravated assault charge, respectively, with the three sentences ordered to run concurrently in the Texas Department of Criminal Justice—Institutional Division. In three issues, with numerous sub-issues, Cantu contends that: (1) the evidence was legally insufficient to support his conviction on all counts; (2) he was denied effective assistance of counsel; (3) and the trial court abused its discretion by allowing him to waive his right to a jury trial without proper admonishment and by sentencing him to the maximum punishment for each count without reviewing the evidence. We affirm.

## I. BACKGROUND

On April 6, 2006, Cantu was at a pool hall called "Hot Shots" with his girlfriend (later to become his wife) Jessica Serna. A verbal altercation occurred between Cantu, Serna, and "Chi Chi Boy." Cantu and Serna were asked to leave the premises, but they returned and later continued their altercation with Chi Chi Boy in the parking lot. At one point, Cantu drove his maroon Suburban into the parking lot and hit Ignacio Tamgumay, Michael Veira, and Immanuel Garcia, all of whom were in the process of leaving the pool hall. It is disputed whether the victims were part of the initial altercation inside the premises, but they were not part of the continued altercation in the parking lot. All three victims were seriously injured, and Tamgumay died as a result of his injuries.

Serna testified that she knew Chi Chi Boy and had problems with him in the past. Serna testified that she and Cantu left the bar and picked up their friend, Daniel Maurecio. When they returned to Hot Shots to pick up Serna's sister and her sister's father-in-law who had remained at the bar, they were surrounded by at least five individuals. These individuals were "calling out" Cantu. Maurecio jumped out of the

2

vehicle and yelled, "[W]ho is messing with my homeboy?", and the exchange quickly became physical. Serna testified that she tried to get Maurecio back in the vehicle and that Cantu also tried to get out of the Suburban, but "they" came after him, so Cantu got back in.

Serna testified that Cantu began to drive away. She then saw him turn the Suburban's wheel, missing an Expedition, but hitting a Ford F-150 truck. Cantu then hit a passenger vehicle and dragged it because it was "stuck" to the Suburban. Serna stated that Cantu did not run down anyone, that he was not driving fast, and that they had problems with the steering wheel of the Suburban.

Maurecio testified that after jumping out of the Suburban, someone hit him. As he was running away, he heard a commotion and saw the Suburban smashing into a white car.

Michael Veira, a friend of the deceased, Tamgumay, testified that he and Tamgumay went to Hot Shots to play pool with their friends Lenardo DeLejia and Immanuel Garcia. Tamgumay was driving a silver Ford F-150 truck, and Veira was a passenger in the truck. DeLejia was in a Chevrolet Malibu, and Garcia was his passenger. Before Hot Shots's closed, Veira went to the bathroom and heard the altercation between Cantu, Serna, and Chi Chi Boy. He testified that he did not know any of them. After about five minutes, Veira and his friends left the premises and gathered in the parking lot to discuss what they were going to do next. The F-150 and Malibu were parked next to each other, with Veira and his friends standing around the two vehicles.

Veira testified that, after a fight broke out, he saw the Suburban driving away but

3

then it returned and drove straight towards his friends and him. Veira testified that there was no hesitation on the part of the driver, and that the Suburban was going between twenty-five and thirty-five miles per hour. Veira stated that the next thing he remembered was a "smack," causing debris and glass to shatter. He was thrown against other vehicles, and felt tires roll over his legs. Veira testified that he did not know where he ended up, but that he was hit so hard that he was lifted out of his shoes. He denied fighting with Cantu and Serna inside the premises. The other members of Veira's party, Garcia and DeLejia, echoed Veira's account of the events.

Vera Rodriguez was at Hot Shots with her husband, Jose Rodriguez, Jr., and her sister, Elma Ortiz. After closing, they walked to the parking lot where they heard people arguing. Vera then saw the Suburban hitting vehicles and then come around again and hit a person who subsequently flew through the air. She testified that the first time the Suburban came around, it hit vehicles and people; she recalled that it came around again to hit the same person another time. Vera did not see the Suburban "stuck" on any vehicle. She recalled that the Suburban was travelling more than ten miles per hour and was "not hesitating." Vera, along with her husband and sister, jumped into their vehicle to get away and called 9-1-1.

Jose Rodriguez Jr. testified that the Suburban began hitting cars when he saw somebody fly into the air. He witnessed the Suburban run over one person twice. After the Suburban left, Jose saw two people on the ground and noticed that Tamgumay was coughing up blood. He stayed with the injured men until an ambulance arrived.

Adam Herrada, another bystander, testified that the Suburban was being swarmed by between seven and fifteen people who all appeared to be trying to attack

4

the driver, Cantu. Herrada testified that it seemed to him that Cantu was merely trying to get away.

Jose Anthony Jacinto was one of the bouncers at Hot Shots. He testified that after closing, someone was banging at the front door of the club. He testified that after opening the door, several people rushed into the bar because they were scared.

Officer Anthony Sanders of the Corpus Christi Police Department testified that he was on patrol the night of April 6, 2006. Upon arrival at the bar, he noted that the atmosphere was chaotic with people running around and yelling different things to him. Someone advised him that a maroon Suburban had hit the victims. Officer Daniel Tovar assisted Officer Sanders and discovered a maroon Suburban abandoned in the alleyway. He testified that he secured the vehicle and found no one inside the vehicle. The Suburban was locked and had damage to the front end of the vehicle. Detective Ralph Lee, a homicide and robbery detective with the Corpus Christi Police Department, interviewed several witnesses on the scene. After his investigation, he obtained a warrant for Cantu's arrest.

Starla White, a crime scene investigator for the Corpus Christi Police Department, conducted an investigation of the crime scene. She took photographs of the area, vehicles, and persons, including Tamgumay. She collected all of the evidence from the scene, including clothing and blood samples. She later documented Tangumay's autopsy. Her photographs were introduced into evidence and showed significant damage to the front of the F-150 truck, along with visible blood splatters. The windshield was also shattered. The photographs revealed that Tamgumay's body was lying next to the vehicles. The photos of the white Malibu also showed damage to the

5

front driver's side. The Suburban showed damage to the front end.

Ray Fernandez, M.D., the medical examiner for Nueces County, testified that he performed the autopsy on Tamgumay. The cause of his death was blunt chest and abdominal trauma; these injuries were consistent with crushing from vehicle tires. Some of the injuries resulted from the initial impact whereas others were from being run over by a vehicle. Tamgumay was hit with enough force to lift him out of his shoes. Dr. Fernandez matched the injuries to the photos of the damaged Suburban. He opined that at time of impact, the Suburban was going between twenty-five to forty miles per hour.

Abel Cantu, Cantu's father, testified that he originally found and helped Serna purchase the Suburban. However, he testified that between the time of purchase, January 11, 2006, and the date of the incident, April 6, 2006, the Suburban was stolen from an H.E.B. grocery parking lot. When the Suburban was returned, the steering did not function properly.

## II. SUFFICIENCY OF THE EVIDENCE

### A. Applicable Law

By his first issue, Cantu challenges the legal sufficiency of the evidence to support his conviction on all charges. Our sufficiency review must be under "a rigorous and proper application" of the *Jackson* standard of review. *See Brooks v. State*, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323

6

S.W.3d at 902 n.19. "[T]he fact-finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of facts proved, and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Under a hypothetically correct jury charge, in a murder case, the State was required to prove beyond a reasonable doubt that Cantu intentionally or knowingly caused the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02. In the aggravated assault cases, the State was required to prove beyond a reasonable doubt that Cantu intentionally, knowingly, or recklessly caused bodily injury to another and used a deadly weapon during the commission of the assault. *Id.* §§ 22.01(a)(1), 22.02(a)(2).

A defendant's intent may be inferred from his words, acts, and conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). "Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime." *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984)); *see Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)

7

(Meyers, J., concurring).

**B.    Analysis**

Cantu argues that he was trying to avoid an altercation by leaving the premises and that he was assaulted after he returned but when he was trying to get away. However, the testimony and evidence contradict this argument.   Serna's testimony shows that Cantu participated in the argument inside Hot Shots.   Cantu also voluntarily returned to the premises after being told to leave.   It was his passenger, Maurecio, who exited the vehicle and began the argument with the other individuals.   Cantu then drove the Suburban at a dangerous speed through a parking lot, hitting several vehicles and at least one person.   He returned through the parking lot at least one more time, running over Tamgumay.   The testimony from independent witnesses, Vera and Rodriguez, was that Cantu intentionally drove towards the people and did not try to avoid the victims or vehicles.   The damage to the vehicles was significant, and the testimony from the medical examiner, Dr. Fernandez, indicated that Cantu hit the victims hard enough to lift them from their shoes.

Though some of this evidence was contradicted, it was within the province of the jury to resolve any such questions, as the jury is the sole judge of the credibility of all of the testimony.   *See Wesbrook*, 29 S.W.3d at 111.   Additionally, Cantu's intent to kill and to cause bodily injury could be inferred from the manner in which he drove the Suburban.   *See Patrick*, 906 S.W.2d at 487.

Thus, viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of murder and aggravated assault beyond a reasonable doubt.   *See Jackson*, 443 U.S. at 319; *Brooks*,

8

323 S.W.3d at 902 n. 19; TEX. PENAL CODE ANN. §§ 29.02, 29.03(a).   Therefore, the evidence was sufficient to support Cantu's conviction and we overrule his first issue.

### III.   INEFFECTIVE ASSISTANCE OF COUNSEL

By his second issue, Cantu argues that he received ineffective assistance of counsel because his trial counsel:    (1) advised him to waive a jury trial, (2) failed to file a motion for new trial, (3) failed to argue for the inclusion of lesser-included offenses in the jury charge, and (4) failed to obtain rulings on pretrial motions.

### A.    Applicable Law

We apply the two-pronged *Strickland* analysis to determine whether counsel's representation was so deficient that it violated a defendant's constitutional right to effective assistance of counsel.   *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.); *see Strickland v. Washington*, 466 U.S. 668, 684 (1984).   An appellant claiming a *Strickland* violation must establish that:   (1) "his attorney's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different." *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

We afford great deference to trial counsel's ability—"an appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   *Jaynes*, 216 S.W.3d at 851.   The appellant must prove both elements of the *Strickland* test by a preponderance of the evidence.   *Munoz v. State*, 24 S.W.3d 427, 434 (Tex. App.–Corpus Christi 2000, no pet.).

### B.    Analysis

9

### 1. Waiver of Jury

Cantu argues that his trial counsel's performance was deficient because he did not practice in Nueces County and was not aware of the trial court's tendency to give lengthy sentences for violent offenses. However, there is nothing in the record to support this allegation. Further, the record shows that Cantu's rights were explained to him, as he fully consented to the waiver of a jury trial by voluntarily executing said waiver. The waiver was explained to him in open court, and Cantu was specifically advised that if he was found guilty, he would not be eligible for probation because he waived a jury. He also signed an affidavit indicating he understood what he was signing. Accordingly, there is nothing in the record to show that there was deficient or prejudicial behavior to indicate ineffective assistance of counsel on this issue. *Jaynes*, 216 S.W.3d at 851; *see Strickland*, 466 U.S. at 687.

### 2. Failure to File a Motion for New Trial

Cantu next argues that his counsel's failure to file a motion for new trial constituted ineffective assistance counsel. Certain presumptions are made when reviewing ineffective assistance of counsel claims that involve the failure to file new trial motions. First, when trial counsel did not withdraw and was not replaced by new counsel prior to the deadline of filing new trial motions, a rebuttable presumption exists that trial counsel continued to represent the defendant during the time for filing a motion for new trial. *Smith v. State*, 17 S.W.3d 660, 662 (Tex. Crim. App. 2000); *Oldham v. State*, 977 S.W.2d 354, 363 (Tex. Crim. App. 1998). Second, if a motion for new trial is not filed in a case, the rebuttable presumption is that the option was considered by appellant's counsel and rejected. *Oldham*, 977 S.W.2d at 363. A third presumption

10

arises if the appellant filed a pro se notice of appeal. In such cases, we consider the filing as evidence that the appellant was informed of at least some of his appellate rights and then we presume that the appellant was adequately counseled unless the record affirmatively displays otherwise. *Id.*

All these presumptions apply to the procedural history of this case. The judgment was signed on November 29, 2007. A pro se notice of appeal was filed on December 5, 2007. A motion to withdraw was filed on May 5, 2008, and a new attorney appointed on May 8, 2008. Cantu was represented during the time period that a motion for new trial should have been filed. *See* TEX. R. CIV. P. 329b (motions for new trial must be filed prior to or within thirty days after the judgment is signed). Because the record contains no motion for new trial, we presume that Cantu considered and rejected having his attorney file one. *Oldham*, 977 S.W.2d at 363. The record contains no contrary evidence. Finally, because the record shows that Cantu filed a timely pro se notice of appeal, we consider the filing as evidence that he was informed of his appellate rights and presume that he was adequately counseled. *Id.* Again, the record contains no contrary evidence. Under *Smith* and *Oldham*, we conclude that Cantu failed to overcome the presumption that he had adequate counsel during the post-trial window of time when a new trial motion could have been filed. *See id.*; *Smith*, 17 S.W.3d at 662.

### 3. Failure to Seek a Lesser-Included Offense in the Charge

Cantu further contends that he was denied effective assistance of counsel because his counsel failed to request the lesser-included offense of either manslaughter or criminally negligent homicide. *See* TEX. PENAL CODE ANN. §§ 19.04, 19.05 (West 2003). A defendant is entitled to an instruction on a lesser-included offense if two

11

conditions are satisfied. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 1993). First, the lesser-included offense must be included within the proof necessary to establish the offense charged. *Id.* at 672. Second, there must be some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty of only the lesser offense. *Id.* at 673. It is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *Skinner v. State,* 956 S.W.2d 532, 543 (Tex. Crim. App. 1994). Rather, there must be some evidence germane to a lesser-included offense for the fact-finder to consider before an instruction on a lesser-included offense is warranted. *Bignall v. State*, 887 S.W.2d 21, 24 (Tex.Crim.App. 1994).

In this case, however, we need not address whether Cantu would have been entitled to a lesser-included offense because it was within the reasonable zone of professional conduct for Cantu's counsel not to seek such an instruction. For example, his counsel may have made a strategic decision that Cantu would be more likely to be acquitted all together if no lesser offense was given to the jury. Such strategic decisions, even if they fail to produce the desired outcome, are not necessarily unreasonable. Therefore, we cannot say that Cantu's attorney's actions in this regard fell below an objective standard of reasonableness. *See Jaynes*, 216 S.W.3d at 851; *Strickland*, 466 U.S. at 687.

### 4. Failure to Obtain Rulings on Pretrial Motions

Finally, Cantu argues that his counsel was ineffective in failing to obtain rulings on pretrial motions. However, he fails to show that any of the pretrial motions were meritorious. *Jackson v. State*, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998) (to prevail

12

on ineffective assistance claim based on failure to file a motion to suppress evidence, appellant must show motion would have been granted); *Roberson v. State*, 852 S.W.2d 508, 510–11 (Tex. Crim. App. 1993) (appellant must show pretrial motions had merit and that rulings would have changed the outcome of the case before counsel will be considered ineffective in failing to assert the motion). Without a showing that rulings on the motions would have changed the outcome of the case, an appellant cannot establish ineffective assistance of counsel for failure to obtain a ruling on pretrial motions. *Magic v. State,* 217 S.W.3d 66, 74 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The only pretrial motion specifically argued by Cantu was a motion concerning prior bad acts. However, this testimony was only elicited in the punishment stage of the trial. There is no argument on whether the motion was meritorious or if and how it would have changed the outcome of the case. By simply arguing that his counsel did not obtain rulings, Cantu fails to to establish ineffective assistance of counsel. Cantu's second issue is overruled.

## IV. BENCH TRIAL

In his final issue, Cantu seems to argue that the trial court abused its discretion by allowing him to proceed with a bench trial and not taking time between evidence and making his ruling.

Article 1.13(a) of the Texas Code of Criminal Procedure provides that a criminal defendant may waive the right of trial by jury, upon entering a plea, but requires that the waiver be made in person by the defendant in writing in open court with the consent and approval of the court and the approval of the attorney representing the State. TEX. CODE CRIM. PROC. ANN. art. 1.13(a) (West 2005). The provision further provides that the

13

trial court's consent and approval of the waiver must be entered of record on the minutes of the court and the approval of the State's attorney must be in writing, signed, and filed in the papers of the cause before the defendant enters his plea. *Id.* The requirements of this article were followed by the trial court. No further admonishments were required, and accordingly, there was no abuse of discretion.

Additionally, there was no abuse of discretion in the timing of the trial court's ruling. The trial court was present throughout the testimony of all the witnesses and the introduction of all the evidence. The trial court need not take any further time to review the evidence at the punishment stage when he was the fact-finder in the guilt/innocence phase. Cantu cited no authority, and we find none, in support of the argument that additional review of the evidence must occur between a trial court's finding of guilt and its determination of punishment. Cantu's third issue is overruled.

## V. CONCLUSION

Having overruled all of Cantu's issues on appeal, we affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
30th day of August, 2011.