

# NUMBER 13-07-00118-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

YOLANDA BALLEZA SALINAS,                                    Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

**On appeal from the 206th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Garza
Memorandum Opinion by Justice Yañez**

Appellant, Yolanda Balleza Salinas, entered an open plea of "guilty" to murder and

was sentenced to fifty years' confinement.[1]  By ten issues, appellant contends that she

---

[1] *See* TEX. PENAL CODE ANN. § 19.02(b)(1) (Vernon 2003).

received ineffective assistance of counsel, her plea was not made knowingly or voluntarily, and the evidence was insufficient to sustain a guilty plea. We affirm.

## I. BACKGROUND

Appellant entered her open plea of "guilty" at a plea hearing on March 8, 2006. At the hearing, appellant stated that she had discussed her case with her attorney, that she was satisfied with the advice he provided, that she was mentally competent, and that she freely and voluntarily signed a stipulation of evidence. When the trial court asked if appellant understood that by signing the stipulation of evidence, she was "signing a confession admitting to the offense stated in it," appellant responded, "Yes." Appellant also affirmed that she was entering her plea of guilty freely and voluntarily.

The trial court admitted into evidence State's exhibits 1, 2, and 3.[2] Exhibit 1 contains, among other things, a stipulation of evidence and plea admonishments signed by appellant. In her stipulation of evidence, appellant acknowledged that she freely and voluntarily pleaded guilty and "admitted" that she "committed each and every element of every offense alleged in the indictment or information, namely MURDER, A FIRST DEGREE FELONY, committed on November 21, 2003." Exhibit 3 includes, among other things, the "probable cause statement by the officer involved in this case," the autopsy report, phone records, and several of appellant's signed written statements given to police.

---

[2] Exhibit 2 contains defendant's waiver of right to appeal "in return for the State making a recommendation on punishment to the Court." However, both parties agree that there was no plea bargain in this case. Furthermore, at the punishment hearing, the State informed the trial court that "[there] was no plea bargain agreement in this case" and stated, "I guess to clarify the record, there may be some confusion as to State[']s [Exhibit] 2 but the agreement that we always had that it was a plea to the court and the—she did not waive the right to appeal." When appellant's trial counsel, asked the trial court to clarify that appellant did not need permission to appeal her case because she entered a "cold plea," the trial court replied, "That's my understanding." Finally, the trial court certified that appellant's case "is not in [sic] a plea-bargain case, and the [appellant] has the right to appeal."

2

The prosecutor informed the trial court of the facts of the case. On November 27, 2003, the burned remains of Maria del Carmen Vasquez were discovered on a ranch. Appellant told the police that Severino David Vasquez, Maria's husband, strangled Maria at appellant's apartment and that appellant was present when the murder occurred.

The trial court asked appellant if she agreed with the facts presented by the prosecutor, and she replied, "Yes." However, in a bench conference, the trial court stated, "I don't know if this was intentional or not but the only thing that you've done is put her in the room with the guy at the time of the murder. . . ." The prosecutor responded that he believed that appellant's plea of guilty in open court, along with "the probable cause that they used for her warrant . . . should be . . . sufficient enough to–" At that point, appellant's trial counsel then interrupted the prosecutor by stating, "It should be, Judge." The trial court subsequently found appellant guilty of murder.

On March 30, 2006, appellant, represented by new trial counsel, Ricardo L. Salinas and Kelly K. McKinnis, filed a motion to withdraw her plea of guilty, and the trial court held a hearing on this motion on November 3, 2006. At the hearing, the trial court attempted to determine whether it was necessary to conduct an evidentiary hearing on appellant's motion to withdraw her plea. The trial court asked defense counsel, "Your motion, your burden, what do you have for the court?" Salinas responded that he had some cases for the trial court to review on the issue and advised the trial court that based on those cases, it "would be necessary" for it to hear "some witness testimony," including testimony from appellant's former trial counsel.

The trial court asked Salinas to describe the court's duty; specifically, the trial court wanted to know if it was mandatory to conduct a hearing on a motion to withdraw a plea

3

or if the issue should be addressed in an appeal or through writ of process. McKinnis replied, "No, Your Honor, just—the cases that we're providing you do not speak—there were no writs involved, no mandamus or anything like that." McKinnis then argued that appellant's plea was involuntary and that he understood that appellant gave consistent statements throughout the proceedings indicating that she did not participate in the actual murder, but that she was involved in disposing of the body.

Salinas further explained that appellant's former trial counsel "may have" incorrectly told her that she was guilty of murder even if her only involvement was in assisting David in disposing of the body. According to Salinas, that was the wrong legal advice. Salinas argued that appellant "wrongfully" pleaded guilty based on her former trial counsel's erroneous advice, and therefore, her plea was involuntary. Salinas informed the trial court that appellant's former trial counsel told him that appellant's version of events never changed; consequently, Salinas argued that he did not "believe that there were a set of facts that would—were presented to [appellant] that would have allowed her to make admissions."

Salinas told the trial court that he anticipated calling appellant's former trial counsel to testify and that the testimony would reveal that appellant's statements regarding her involvement had not changed and she never admitted to her former trial counsel "anything different that would legally make her responsible for the charge in the indictment." Furthermore, according to Salinas, at a hearing on appellant's motion to withdraw her plea, appellant would testify that she "thought she was responsible of murder based on the advice given to her" by her former trial counsel. Salinas stated that it was a possibility that he would testify at the hearing because of his discussion with appellant's former trial

4

counsel regarding admissions the former trial counsel made concerning the advice he gave appellant.

The trial court asked the State if it had any cases to present on the issue, and the State responded that it did. The State also argued that appellant's former trial counsel had access to the State's file and that appellant's former trial counsel may have reviewed other evidence allowing a conclusion that appellant should plead guilty.

Salinas then stated that at a hearing on appellant's motion, he would produce appellant's former trial counsel's notebook that would lead to an assumption that former trial counsel "really thought—that without any prior admissions or without anything from her to suggest that she planned or aided or abetted . . . you get the impression that—that [former trial counsel] assumed that things [appellant] did after the fact were—could make her responsible as an accomplice." Based on appellant's statements and former trial counsel's information, Salinas argued that the evidence did not establish that appellant had the requisite mental state to commit murder, even if the State proved that she was present during the murder, had knowledge of the murder, and participated in the disposal of the body. Salinas stated, "There is nothing in there—there is nothing in there—that shows that she aided, abetted[,] or that she did anything during the commission of the offense that would hold her responsible like a principal." Salinas then informed the trial court that he asked appellant's former trial counsel, "Did [appellant] ever tell you or confess to you any set of facts that would justify her plea?," and former trial counsel responded, "No."

The trial court then asked if it had to "grant an evidentiary hearing as opposed to allowing it to proceed through a different procedure. . . ." Salinas argued that the trial court would have to conduct a hearing. The trial court asked for authority showing that it was

5

required to address the motion to withdraw the plea through an evidentiary hearing and for authority on "how" a claim of ineffective assistance of counsel "normally" progresses. McKinnis informed the trial court that appellant's claims were unusual because they were being asserted "very early on in the proceedings" and that he did not know whether the trial court was required to conduct an evidentiary hearing.

The trial court asked if either side had found any cases indicating whether it was required to conduct an evidentiary hearing on appellant's motion to withdraw her plea. Both sides stated that they had not found any such authority. Salinas informed the trial court that he had not researched the issue because he assumed that there would be an evidentiary hearing. Thereafter, the trial court asked for a letter brief showing the authority that mandates an evidentiary hearing or shows that it is a discretionary matter for the trial court. The parties agreed to file briefing on the issue, and the trial court stated that it would either schedule an evidentiary hearing or rule on appellant's motion based on the authority presented if it determined that a hearing was not mandatory.

Without holding an evidentiary hearing, the trial court denied appellant's motion to withdraw her plea on January 9, 2007. At the sentencing hearing on January 24, 2007, the trial court sentenced appellant to fifty years' confinement.

Appellant then made a bill of exception providing Salinas's testimony. Salinas testified that he reviewed former trial counsel's files and statements that appellant made to law enforcement. Salinas stated that after speaking to appellant, he filed a motion to withdraw the plea because the information given by appellant "based on the law and the way [he saw] it" did not justify her plea of guilty. Salinas stated that he did not find "anything" in appellant's statements to police "that would lead [him] to believe that she had

6

been involved in the planning of the murder itself or that she—or that she had somehow or the other [sic] aided or abetted." Salinas did not believe that appellant had admitted any elements of the offense. Salinas stated that appellant consistently alleged that her involvement was after the murder occurred. Salinas testified that appellant's former trial counsel had told him "that the reason [appellant] had plead[ed] was because she had assisted in disposing of the body," and that former trial counsel stated that "simply disposing of—of the—body in his mind was enough—to—to justify [appellant] entering the plea." Salinas expressed that, in his professional opinion as a lawyer, simply assisting with disposing of the body would not have constituted murder. Salinas concluded:

> [A]t the time of [appellant's] plea these were still the only admissions she was willing to make. And, therefore, a lawyer who was sufficiently competent and versed in this area of criminal work would have told her, look, that's not enough. I can't allow you to plea. I can't allow you to go in front of the Judge and perjure yourself and basically tell her a lie just because you're seeking a better recommendation on behalf—a—a—a lenient recommendation on behalf of the DA's office.

On cross-examination by the State, Salinas testified that appellant's former trial counsel had not been subpoenaed to appear. Appellant did not testify.

## II. Ineffective Assistance of Counsel

By her first five issues, which appellant has briefed as one, appellant contends that her former trial counsel rendered ineffective assistance of counsel.[3] Specifically, appellant

---

[3] Appellant's first five issues state:

. . . The trial court erred in entering judgment against appellant because appellant's trial counsel at the time of the plea of guilty rendered ineffective assistance of counsel.

. . . .

The trial court erred in denying appellant's motion and amended motion to change plea and motion for reconsideration of withdrawal of plea because appellant's trial counsel at the time of the plea of guilty rendered ineffective assistance of counsel.

7

argues that her former trial counsel "concluded that Appellant was guilty of murder simply by assisting Vasquez in disposing of the body"; therefore, he "erred in advising Appellant to plead guilty because she was not guilty of murder and was at most guilty of hindering apprehension."

## A. Standard of Review and Applicable Law

Ineffective assistance of counsel claims are evaluated under the two-part test articulated by the U.S. Supreme Court in *Strickland v. Washington*.[4] The *Strickland* test requires the appellant to show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness.[5] Assuming appellant has demonstrated deficient assistance, she must then show that there is a

---

. . . .

The trial court erred in entering judgment against appellant because appellant's trial counsel rendered ineffective assistance of counsel in advising and encouraging appellant to plea[d] guilty to murder when the facts of the case show that appellant at worst was guilty of the offense of hindering apprehension.

. . . .

The trial court erred in denying appellant's motion and amended motion to change plea and motion for reconsideration of withdrawal of plea because defendant's trial counsel rendered ineffective assistance of counsel in advising and encouraging appellant to plea[d] guilty to murder when the facts of the case show that appellant at worst was guilty of the offense of hindering apprehension.

. . . .

The trial court erred in entering judgment against appellant because appellant's trial counsel rendered ineffective assistance of counsel in failing to pursue and obtain a plea bargain offer with the State.

[4] *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).

[5] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 689, 694.

8

reasonable probability that, but for counsel's errors, the result would have been different.[6] In determining the validity of appellant's claim of ineffective assistance of counsel, "any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight."[7]

The burden is on appellant to prove ineffective assistance of counsel by a preponderance of the evidence.[8] Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his or her actions could be considered sound trial strategy.[9] A reviewing court will not second-guess legitimate tactical decisions made by trial counsel.[10] Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions.[11]

## B. Analysis

An allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.[12] Here, there is no record of the conversations between appellant and her former trial counsel, and neither appellant nor her former trial counsel testified below. However, Salinas did state in appellant's bill

---

[6] *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 689, 694.

[7] *Thompson*, 9 S.W.3d at 813.

[8] *Id.*

[9] *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).

[10] *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008).

[11] *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

[12] *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814; *see Jackson v. State*, 877 S.W.2d 768, 771-72 (Tex. Crim. App. 1994) (en banc).

of exception that former trial counsel told him "that the reason [appellant] had plead[ed] was because she had assisted in disposing of the body," and that former trial counsel "in his mind" considered that act alone as justification for pleading guilty.

Although Salinas stated that former trial counsel considered the act of disposing of the body as justification for pleading guilty to murder, he did not state that former trial counsel advised appellant to plead guilty solely on that basis. Without testimony from appellant's former trial counsel, we are unable to determine whether he exercised reasonable professional conduct and whether he even advised appellant to plead guilty based on that reason alone. Therefore, we cannot conclude that the testimony by Salinas during appellant's bill of exception is the type of evidence that affirmatively demonstrates former trial counsel's alleged ineffectiveness.[13] Furthermore, we cannot conclude that with this evidence, appellant has fulfilled her burden of proving her former trial counsel's ineffectiveness by a preponderance of the evidence.

The State indicated that former trial counsel had reviewed the State's file and that he may have determined that there was circumstantial evidence of appellant's involvement in the murder. We agree. In Texas, the State must provide "sufficient evidence" substantiating the guilt of a defendant who waives a jury trial in a felony case.[14] Evidence is sufficient to support a judgment if it embraces every essential element of the offense charged and establishes the defendant's guilt.[15] If appellant's former trial counsel reviewed

---

[13] *See Bone*, 77 S.W.3d at 835; *Thompson*, 9 S.W.3d at 814; *see also Jackson*, 877 S.W.2d at 771-72.

[14] TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005).

[15] *McGill v. State*, 200 S.W.3d 325, 330 (Tex. App.–Dallas 2006, no pet.) (citing *Stone v. State*, 919 S.W.2d 424, 427 (Tex. Crim. App. 1996)).

the State's file, it is possible he determined that the evidence in that file established appellant's guilt.[16]  However, as previously discussed, this record is silent concerning trial counsel's actions.

Therefore, we conclude that appellant has not shown that her former trial counsel's performance was deficient.  We overrule appellant's first five issues.[17]

### III.  DENIAL OF MOTION TO WITHDRAW

By a sub-issue, appellant challenges the trial court's denial of her motion to withdraw her plea because of former trial counsel's alleged ineffective assistance.  However, because we have concluded that appellant has not shown that trial counsel rendered ineffective assistance, we overrule appellant's sub-issue.

### IV.  VOLUNTARINESS OF PLEA

By her sixth through ninth issues, which appellant has briefed as one, appellant contends that her plea was involuntary due to her former trial counsel's ineffective assistance.

Because appellant has not shown that trial counsel was ineffective, appellant has not proven that her plea was involuntary due to ineffective assistance of counsel.

---

[16] *See Andrews v. State*, 159 S.W.3d 98, 101 (Tex. Crim. App. 2005) ("[W]e commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it.").

[17] Although her direct appeal is unsuccessful, appellant is not without a potential remedy.  Appellant may raise her claim of ineffective assistance of counsel, requiring the development of a record, in an application for writ of habeas corpus.  *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (Vernon Supp. 2009); *Ex parte Rich*, 194 S.W.3d 508, 513 n.9 (Tex. Crim. App. 2006) ("[I]n a case where the original record does not show the problem with the proceedings or the punishment, habeas may be used as a substitute for a motion for new trial. In fact, . . . the preferred method to present [ineffective assistance of counsel claims] is to submit an application for writ of habeas corpus.").  An application for writ of habeas corpus relief would "provide an opportunity to conduct a dedicated hearing to consider the facts, circumstances, and rationale behind counsel's actions at . . . trial." *Thompson*, 9 S.W.3d at 814-15.

11

Therefore, we overrule appellant's sixth through ninth issues.

## V. SUFFICIENCY OF THE EVIDENCE

By her tenth issue, appellant contends that the evidence was insufficient to sustain her conviction because in her statements to police, she did not "admit to intentionally causing the death of the victim." Appellant argues that she was "threatened with death if she did not help [David] move the body" and that evidence of that act alone is insufficient to sustain a conviction of murder.

Although appellant may not have "admitted to intentionally causing the death of the victim" in her statements to police, she signed a stipulation of evidence wherein she admitted that she "committed each and every element of every offense alleged in the indictment or information, namely, MURDER, A FIRST DEGREE FELONY, committed on NOVEMBER 21, 2003." At the plea hearing, appellant stated that she understood that by signing the stipulation of evidence, she was signing a confession admitting to the offense of murder. Appellant also stated that she was pleading guilty to murder because the facts as she understood them made her guilty. This evidence was sufficient to sustain her conviction.[18] We overrule appellant's tenth issue.[19]

---

[18] *See Menefee v. State*, 287 S.W.3d 9, 13 (Tex. Crim. App. 2009) ("[O]ur case law has recognized that the defendant may enter a sworn written statement, or may testify under oath in open court, specifically admitting his culpability or at least acknowledging generally that the allegations against him are in fact true and correct; and again, so long as such a judicial confession covers all of the elements of the charged offense, it will suffice to support the guilty plea.").

[19] We note that pursuant to article 1.15 of the code of criminal procedure, in felony cases where the defendant pleads guilty, the State must produce sufficient evidence substantiating the defendant's guilt. *See McGill*, 200 S.W.3d at 330 (citing TEX. CODE CRIM. PROC. ANN. art. 1.15 (Vernon 2005)). However, appellant does not complain on appeal that the evidence is insufficient pursuant to article 1.15.

12

## VI. Conclusion

We affirm the trial court's judgment.

_____
Linda R. Yañez,
Justice

Do not publish.
See Tex. R. App. P. 47.2(b).

Delivered and filed
the 8th day of April, 2010.