NUMBER 13-09-00218-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG

 

BENITO LOPEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 

On appeal from the 117th District Court

 of Nueces County, Texas.

 

O P I N I O N


Before Justices Rodriguez, Benavides, and Vela

Opinion by Justice Benavides


 Appellant, Benito Lopez, appeals from the trial court's revocation of his deferred
adjudication community supervision. See Tex. Code Crim. Proc. Ann. art. 42.12 §§
5(b), 23 (Vernon Supp. 2009). By two issues, Lopez argues that the State improperly
amended the motion to revoke his community supervision two days before the
revocation hearing, in violation of article 42.12 section 21(b) of the Texas Code of
Criminal Procedure, see id. art. 42.12 § 21(b), and that he received ineffective
assistance of counsel during the revocation hearing. We affirm. 

I. Background

 On February 17, 2005, Lopez was indicted on one count of murder and two
counts of aggravated assault. See Tex. Penal Code Ann. § 19.02 (Vernon 2003), §
22.02 (Vernon Supp. 2009). Pursuant to a plea bargain, Lopez pleaded guilty, and on
December 13, 2005, the trial court deferred adjudication and placed Lopez on five years
of community supervision. See Tex. Code Crim. Proc. Ann. art. 42.12 § 5(a). 

 On August 1, 2006, the State filed a motion to revoke Lopez's community
supervision, alleging seven violations. Lopez pleaded "true" to six of the alleged
violations, including (1) testing positive for marijuana; (2) failing to report to his
supervision officer; (3) failing to pay court costs; (4) failing to pay a photo identification
fee; (5) failing to pay a monthly supervision fee; and (6) failing to observe a curfew. 
Lopez denied the seventh allegation, which was that he failed to complete his
community service. The trial court found that Lopez violated the terms of his community
supervision but did not proceed to adjudicate guilt. Instead, the trial court continued
Lopez on community supervision and imposed sanctions, including requirements that
Lopez (1) attend the Coastal Bend Outpatient Program for anger management; (2)
abide by a curfew for an additional six months; and (3) serve sixty days in the Nueces
County Jail (known as the S.P.U.R.S. program). 

 On January 24, 2008, the State filed a second motion to revoke Lopez's
community supervision. The State alleged eight violations of Lopez's supervision. 
Lopez pleaded "true" to five of the allegations: (1) failing to report to his supervision
officer; (2) failing to pay court costs; (3) failing to complete the Coastal Bend Outpatient
program; (4) failing to complete community service; and (5) failing to complete the
S.P.U.R.S. program. Lopez denied that he had failed to attend anger management
classes and failed to comply with two conditions of his supervision relating to MHMR
counseling. No express ruling appears in the record on the State's second motion to
revoke; however, the trial court's docket sheet indicates that on February 19, 2008, the
trial court continued Lopez on community supervision and sanctioned him by extending
the term of supervision for a year, with the further conditions that Lopez participate in
the MHMR program previously ordered by the court.

 The State then sought, for the third time, to revoke Lopez's community
supervision. The record shows that on March 2, 2009, the State filed what it called an
"Amended Second Original Motion to Revoke." The motion that this "amended" motion
supposedly sought to amend was not included in the record. In the amended motion,
the State alleged that Lopez violated his community supervision by (1) burglarizing a
habitation; (2) burglarizing six different vehicles; (3) testing positive for marijuana on two
separate occasions; (4) failing to pay court costs, photo identification fees, and monthly
supervision fees; (5) failing to attend the Coastal Bend Outpatient Program; and (6)
failing to complete community service. 

 The trial court held a hearing on this motion two days later on March 4, 2009. At
the hearing, Lopez's counsel announced ready. The trial court looked through its file,
attempting to locate the motion to revoke, but could not locate it. Finally, the court
located the amended motion and asked Lopez if he had received a copy of the "second
amended motion that was filed on March the 2nd of 2009," and Lopez answered, "Yes,
sir." The trial court then asked if Lopez had an opportunity to discuss the motion with
his attorney, and Lopez said he had. Lopez then waived the reading of the motion. 
Lopez's counsel did not object that the amended motion had been filed only two days
before the hearing or that the original motion was missing from the record. 

 The State abandoned its allegation that Lopez burglarized a habitation, and
Lopez then pleaded "true" to all of the allegations in the State's motion. The State
asked the trial court to take judicial notice of Lopez's guilty plea and Lopez's testimony
during the trial of his co-defendant. The State then made the following argument:

I think, and I'm asking the Court that enough is enough on Mr. Lopez that
his chance, the excuse of being young and stupid was when he was given
probation when he testified. Thank you for testifying. Now, go be a good
citizen; however, he pretty much ignored that opportunity, continued to
violate the law, have additional victims, and what I'm asking the Court to
do is to give closure to the family of Inocension Lerma, the mom and dad
who are sitting here and his family and to close the chapter on the death
of their son.


There's always been a matter of time of holding Mr. Lopez accountable
and today is judgment day for Benito Lopez and for his role in it and it's
time to pay the piper for what he did.


It is my request of the Court on behalf of the family that Mr. Lopez have
his deferred adjudication revoked and that he be sentenced to the
Institution[al] Division of the Texas Department of Criminal Justice for a
period of between 5 and 99 years or life that the Court believes is just for
the opportunities Mr. Lopez has received, for participation in this crime
and for his continually ignoring the laws of the State of Texas, continually
disregarding the citizens, doing what he wants to do.


I think Mr. Lopez has shown that as long as he's at large, our citizens are
in danger. I ask the Court to assess a heavy and severe sentence that the
Court believes is appropriate.


 Defense counsel called Lopez's sister, Melinda Nava, to testify on his behalf. 
Nava claimed that Lopez was bipolar and taking medication. She claimed that he does
not have a car and that she tried to help him attend all the required meetings for his
community supervision until she had a liver transplant a year earlier. She claimed that
Lopez could not pay the costs and other fees ordered by the trial court because he was
depressed and could not get a job because of his criminal record. 

 The State then called Gloria Lerma, the mother of the murder victim, to testify
regarding punishment. At the end of the testimony, the following exchange occurred
regarding sentencing:

[Defense Counsel]: I would ask the Court instead of sending him to
prison, to--if the Court is going to adjudicate[,] to
adjudicate him and send him to the county jail for a
significant period of time, such as 180 days and put
him on an intensive supervision program. Part of that
program be that he gets special needs help to help
him with his bipolar and his depression and also help
through a restitution setting.


I know in Sinton they have a restitution center there. 
I'm not sure if we have that here, but to have him go
to a restitution center so hopefully they can get him
lined up with a job so he can start making his Court
cost[s] and his payments and finish his community
service hours and hope that he can try to do as much
as he can possibly humanly do to pay the restitution
in this case, to help for what he's done in this case.


Obviously, he can't bring back the victim. There's
nothing he can do that [sic]. He did testify in the case. 
I think--I think he did as much as he could do on that
point. There is like what he said, there is no
justification for breaking into people's cars, the fact
that you're poor is not an excuse. I understand that,
and the fact that you have mental problems is not an
excuse either.


I do believe he's a young man. I do believe that
the--the Court was to sanction him, adjudicate him,
leave him on prohibition [sic], put him in the county jail
for a significant period of time and then if released put
him on an ISP program, electronic monitoring, make
sure that he gets help, special needs in some form of
restitution center so that he can learn a trade even
with the--the conviction on his record that he can go
on with his life. That's the extent of our argument.


[The State]: In closing, Your Honor, murder is a 3G offense. You
cannot adjudicate murder and put someone on
probation. It has to be--it has to be TDC, number
one. . . . . The state's position that since he's
continued to commit crimes, apparently, showing no
remorse by causing the victims that the punishment
should fit the crime[,] and the crime is murder.


[Defense Counsel]: Interestingly, correct on that. I do remember the
change being on the murder if there is no probation. 
That being the case, I would ask the Court to take into
consideration what we have heard from--


[The State]: I don't think there is an opportunity to--I think the
state is entitled to the closing argument.


[Defense Counsel]: That's fine. I just ask that the Court consider what the
sister has told us considering the length of time the
Court is going to sentence.


 The trial court adjudicated Lopez guilty of murder and two counts of aggravated
assault and sentenced him to twenty years' imprisonment in the Texas Department of
Criminal Justice--Institutional Division. Lopez did not file a motion for new trial. This
appeal ensued.

II. Ineffective Assistance of Counsel

 By his first issue, Lopez argues that his counsel was ineffective because, after
the State argued for a heavy sentence, his counsel asked the trial court to adjudicate
him guilty and then probate the sentence, which is prohibited in murder cases. See id.
art. 42.12 § 3(g). Lopez argues that his "attorney did not have a knowledgeable grasp
of the law and facts surrounding the circumstances of the charges," and there can be
"no valid trial strategy for being wrong." He argues that he had "one chance at the
hearing to establish a feasible recommendation to the court as an alternative to the
state's pronouncement of a severe prison sentence[,] and his attorney made a critical
error that did not serve [his] best interest." We disagree.

 We apply the two-pronged Strickland analysis to determine whether counsel's
representation was so deficient that it violated a defendant's constitutional right to
effective assistance of counsel. Goodspeed v. State, 187 S.W.3d 390, 392 (Tex. Crim.
App. 2005); Jaynes v. State, 216 S.W.3d 839, 851 (Tex. App.-Corpus Christi 2006, no
pet.); see Strickland v. Washington, 466 U.S. 668, 684 (1984). An appellant claiming a
Strickland violation must establish that (1) "his attorney's representation fell below an
objective standard of reasonableness, and (2) there is a reasonable probability that, but
for his attorney's errors, the result of the proceeding would have been different." 
Jaynes, 216 S.W.3d at 851; see Strickland, 466 U.S. at 687. 

 We afford great deference to trial counsel's ability--"an appellant must overcome
the strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance." Jaynes, 216 S.W.3d at 851. The appellant must prove both
elements of the Strickland test by a preponderance of the evidence. Munoz v. State, 24
S.W.3d 427, 434 (Tex. App.-Corpus Christi 2000, no pet.). 

 First, we disagree with Lopez's characterization of the revocation hearing. 
Although his attorney requested the trial court proceed with adjudication and then
probate the sentence, his arguments are also consistent with a request that the trial
court not adjudicate Lopez but instead sanction him and continue the deferred
adjudication community supervision, which was in the trial court's power. See Tex.
Code Crim. Proc. Ann. art. 42.12 § 22. Additionally, contrary to Lopez's argument, his
trial counsel did ask for a reduced sentence in light of Lopez's sister's testimony, which
offered explanations for some of the community supervision violations. 

 Second, and more importantly, Lopez has not presented any evidence that,
absent his attorney's erroneous legal argument, the result would have been different. 
See Ex parte Battle, 817 S.W.2d 81, 84 (Tex. Crim. App. 1991) (holding that the
defendant proved prejudice from attorney's faulty advise regarding availability of
probation where defendant would not have pleaded guilty but for faulty advice); State v.
Recer, 815 S.W.2d 730, 731-32 (Tex. Crim. App. 1991). Lopez does not argue that he
would not have pleaded "true" to the allegations in the State's motion to revoke if he had
known that he could not be adjudicated and have the sentence probated. Furthermore,
Lopez does not provide this Court with an alternative to the sentence he received that
the trial court would have, more probably than not, adopted. 

 The simple fact is that Lopez admitted numerous violations of his community
supervision, and the trial court, on two prior occasions, had refused to adjudicate
Lopez's underlying crimes and had continued his community supervision. Lopez used
up his last chance by violating the terms of his community supervision yet again. There
is nothing to suggest that, had his counsel made some other argument, he would have
received yet another chance or a reduced sentence. We overrule his first issue. 

III. Amended Motion to Revoke Community Supervision

 By his second issue, Lopez argues that the State amended its motion to revoke
two days before the hearing without a showing of good cause, in violation of article
42.12, section 21(b) of the Texas Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 42.12 § 21(b). That section provides, in relevant part: 

In a felony case, the state may amend the motion to revoke community
supervision any time up to seven days before the date of the revocation
hearing, after which time the motion may not be amended except for good
cause shown, and in no event may the state amend the motion after the
commencement of taking evidence at the hearing. The judge may
continue the hearing for good cause shown by either the defendant or the
state.

 

Id. 

 The State concedes that the amendment was untimely but argues that Lopez
waived this issue by failing to object in the trial court. Lopez argues that his right to
avoid proceeding on an untimely amended motion to revoke is a "waivable only" right
and that because he did not expressly waive the error, we can review it. In the
alternative, Lopez argues that by failing to object, his counsel was ineffective. We
agree with the State that Lopez cannot prevail on his issue, but for a different reason. (1)

 As the Texas Court of Criminal Appeals has explained, community supervision is
a contractual privilege, not a systemic right, and Lopez does not argue otherwise. See
Speth v. State, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999). In this case, Lopez
complains of a statutory violation, which is subject to rule 44.2(b)'s harm analysis. Tex.
R. App. P. 44.2(b); see Aguirre-Mata v. State, 992 S.W.2d 495, 499 (Tex. Crim. App.
1999); see, e.g., Curry v. State, 966 S.W.2d 203, 206 (Tex. App.-El Paso 1998),
vacated in part on other grounds by 975 S.W.2d 629 (Tex. Crim. App. 1998) (applying
rule 44.2(b) to error in allowing untimely amendment of indictment). Under rule 44.2(b),
we may not reverse a conviction based on error that does not affect the defendant's
substantial rights. Tex. R. App. P. 44.2(b). Lopez has not made such a showing here. 

 When Lopez appeared at the hearing, the trial court asked whether he had
reviewed the amended motion with his attorney, and Lopez affirmatively represented
that he had. Lopez then waived the reading of the motion and pleaded "true" to every
allegation in the amended motion. There is nothing in the record showing that a
continuance of five more days to allow compliance with the statute would have resulted
in a different plea to any of the alleged violations of community supervision. See id.;
see also Brown v. State, No. 04-04-00465-CR, 2005 WL 1276401, at *1 (Tex. App.-San
Antonio June 1, 2005, no pet.) (mem. op., not designated for publication) (holding that
defendant failed to show harm from violation of article 42.12 section 21(b) by pleading
"true" to at least one of the allegations in the original motion).

 For the same basic reason, Lopez could not prevail on a claim of ineffective
assistance of counsel. Even assuming that his attorney was ineffective in failing to
object to the untimely amendment, Lopez does not point to anything in the record
demonstrating that, but for his attorney's errors, the result of the proceeding would have
been different. Jaynes, 216 S.W.3d at 851; see Strickland, 466 U.S. at 687. 
Accordingly, we overrule Lopez's second issue. 

IV. Conclusion

Having overruled both of Lopez's issues, we affirm the trial court's judgment.


 __________________________

 GINA M. BENAVIDES,

 Justice



Publish.

See Tex. R. App. P. 47.2(b).


Delivered and filed the

15th day of July, 2010.

1. [1] There are three distinct types of rights that require the application of differing rules of procedural default: 
"(1) absolute requirements and prohibitions; (2) rights of litigants that must be implemented by the system
unless expressly waived; and (3) rights of litigants that are to be implemented upon request." Anderson v.
State, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). Absolute rights must be implemented regardless of
whether they are requested and even if both parties object. Id. "Waivable" rights are those that are not
forfeited by inaction alone, but must be expressly waived. Id. "All other complaints, whether
constitutional, statutory, or otherwise, are subject to forfeiture, and fall into the third category." Id. This
framework of procedural default was set forth by the Texas Court of Criminal Appeals in a 1993 in Marin v.
State, 851 S.W.2d 275 (Tex. Crim. App. 1993), overruled on other grounds by Cain v. State, 947 S.W.2d
262 (Tex. Crim. App. 1997).


 Prior to Marin, this Court held that the failure to object to an untimely amendment to a motion to
revoke waives the error. See Burns v. State, 835 S.W.2d 733, 735 (Tex. App.-Corpus Christi 1992, pet.
ref'd). We have not determined where article 42.12, section 21(a) fits within Marin's framework, although
we have followed Burns in an unpublished decision since Marin was decided. See Giordano v. State, No.
13-96-285-CR, 1998 WL 34201885, at *1 (Tex. App.-Corpus Christi Apr. 23, 1998, no pet.) (not
designated for publication). Our sister courts of appeal have also followed Burns without analyzing
Marin's impact. See, e.g., Lewis v. State, 195 S.W.3d 205, 208 (Tex. App.-San Antonio 2006, no pet.). 
We need not decide the issue now because, even if the right Lopez asserts now was "waivable only," he
still was required to show harm from the error. See Tex. R. App. P. 44.2(b).