NUMBER
13-07-00723-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

ANDREW CANTU,                                      
                  Appellant,

 

v.

 

THE STATE OF TEXAS,                                    Appellee.

                                                                     


 

On appeal from the 319th
District Court

of Nueces County,
Texas.

                                                                     


 

MEMORANDUM OPINION

 

                  Before
Justices Rodriguez, Benavides, and Vela

                      Memorandum
Opinion by Justice Benavides

 

            Appellant,
Andrew Cantu, was charged with one count of murder and two counts of aggravated
assault.  See Tex.
Penal Code Ann. §§ 19.02, 21.01, 22.02 (West 2003).  Cantu waived
his right to a jury trial, and a bench trial was held.  The trial court found Cantu
guilty on all three counts and sentenced him to life on the murder charge and twenty
years’ confinement on each aggravated assault charge, respectively, with the
three sentences ordered to run concurrently in the Texas Department of Criminal
Justice—Institutional Division.  In three issues, with numerous sub-issues,
Cantu contends that:  (1) the evidence was legally insufficient to support his
conviction on all counts; (2) he was denied effective assistance of counsel;
(3) and the trial court abused its discretion by allowing him to waive his
right to a jury trial without proper admonishment and by sentencing him to the
maximum punishment for each count without reviewing the evidence.  We affirm.

I.  Background

            On
April 6, 2006, Cantu was at a pool hall called “Hot Shots” with his girlfriend
(later to become his wife) Jessica Serna.  A verbal altercation occurred
between Cantu, Serna, and “Chi Chi Boy.”  Cantu and Serna were asked to leave
the premises, but they returned and later continued their altercation with Chi
Chi Boy in the parking lot.  At one point, Cantu drove his maroon Suburban into
the parking lot and hit Ignacio Tamgumay, Michael Veira, and Immanuel Garcia,
all of whom were in the process of leaving the pool hall.  It is disputed
whether the victims were part of the initial altercation inside the premises,
but they were not part of the continued altercation in the parking lot.  All three
victims were seriously injured, and Tamgumay died as a result of his injuries.

            Serna
testified that she knew Chi Chi Boy and had problems with him in the past.  Serna
testified that she and Cantu left the bar and picked up their friend, Daniel
Maurecio.  When they returned to Hot Shots to pick up Serna’s sister and her
sister’s father-in-law who had remained at the bar, they were surrounded by at
least five individuals.  These individuals were “calling out” Cantu.  Maurecio
jumped out of the vehicle and yelled, “[W]ho is messing with my homeboy?”, and
the exchange quickly became physical.  Serna testified that she tried to get
Maurecio back in the vehicle and that Cantu also tried to get out of the
Suburban, but ”they” came after him, so Cantu got back in. 

Serna
testified that Cantu began to drive away.  She then saw him turn the Suburban’s
wheel, missing an Expedition, but hitting a Ford F-150 truck.  Cantu then hit a
passenger vehicle and dragged it because it was “stuck” to the Suburban.  Serna
stated that Cantu did not run down anyone, that he was not driving fast, and
that they had problems with the steering wheel of the Suburban. 

            Maurecio
testified that after jumping out of the Suburban, someone hit him.  As he was
running away, he heard a commotion and saw the Suburban smashing into a white
car.

            Michael
Veira, a friend of the deceased, Tamgumay, testified that he and Tamgumay went
to Hot Shots to play pool with their friends Lenardo DeLejia and Immanuel
Garcia.  Tamgumay was driving a silver Ford F-150 truck, and Veira was a
passenger in the truck.  DeLejia was in a Chevrolet Malibu, and Garcia was his
passenger.  Before Hot Shots’s closed, Veira went to the bathroom and heard the
altercation between Cantu, Serna, and Chi Chi Boy.  He testified that he did
not know any of them.  After about five minutes, Veira and his friends left the
premises and gathered in the parking lot to discuss what they were going to do
next.  The F-150 and Malibu were parked next to each other, with Veira and his
friends standing around the two vehicles.

            Veira
testified that, after a fight broke out, he saw the Suburban driving away but
then it returned and drove straight towards his friends and him.  Veira
testified that there was no hesitation on the part of the driver, and that the
Suburban was going between twenty-five and thirty-five miles per hour.  Veira
stated that the next thing he remembered was a “smack,” causing debris and
glass to shatter.  He was thrown against other vehicles, and felt tires roll
over his legs.  Veira testified that he did not know where he ended up, but
that he was hit so hard that he was lifted out of his shoes.  He denied
fighting with Cantu and Serna inside the premises.  The other members of
Veira’s party, Garcia and DeLejia, echoed Veira’s account of the events.

            Vera
Rodriguez was at Hot Shots with her husband, Jose Rodriguez, Jr., and her
sister, Elma Ortiz.  After closing, they walked to the parking lot where they
heard people arguing.  Vera then saw the Suburban hitting vehicles and then
come around again and hit a person who subsequently flew through the air.  She
testified that the first time the Suburban came around, it hit vehicles and
people; she recalled that it came around again to hit the same person another
time.  Vera did not see the Suburban “stuck” on any vehicle.   She recalled
that the Suburban was travelling more than ten miles per hour and was “not
hesitating.”  Vera, along with her husband and sister, jumped into their
vehicle to get away and called 9-1-1. 

            Jose
Rodriguez Jr. testified that the Suburban began hitting cars when he saw
somebody fly into the air.  He witnessed the Suburban run over one person
twice.  After the Suburban left, Jose saw two people on the ground and noticed
that Tamgumay was coughing up blood.  He stayed with the injured men until an
ambulance arrived.          Adam Herrada, another bystander, testified that the
Suburban was being swarmed by between seven and fifteen people who all appeared
to be trying to attack the driver, Cantu.  Herrada testified that it seemed to
him that Cantu was merely trying to get away.

             Jose
Anthony Jacinto was one of the bouncers at Hot Shots.  He testified that after
closing, someone was banging at the front door of the club.  He testified that
after opening the door, several people rushed into the bar because they were
scared.

            Officer
Anthony Sanders of the Corpus Christi Police Department testified that he was
on patrol the night of April 6, 2006.  Upon arrival at the bar, he noted that
the atmosphere was chaotic with people running around and yelling different
things to him.  Someone advised him that a maroon Suburban had hit the
victims.  Officer Daniel Tovar assisted Officer Sanders and discovered a maroon
Suburban abandoned in the alleyway.  He testified that he secured the vehicle
and found no one inside the vehicle.  The Suburban was locked and had damage to
the front end of the vehicle.  Detective Ralph Lee, a homicide and robbery
detective with the Corpus Christi Police Department, interviewed several
witnesses on the scene.  After his investigation, he obtained a warrant for
Cantu’s arrest.

            Starla
White, a crime scene investigator for the Corpus Christi Police Department,
conducted an investigation of the crime scene.  She took photographs of the
area, vehicles, and persons, including Tamgumay.  She collected all of the
evidence from the scene, including clothing and blood samples.  She later documented
Tangumay’s autopsy.  Her photographs were introduced into evidence and showed
significant damage to the front of the F-150 truck, along with visible blood
splatters.  The windshield was also shattered.  The photographs revealed that
Tamgumay’s body was lying next to the vehicles.  The photos of the white Malibu
also showed damage to the front driver’s side.  The Suburban showed damage to
the front end.

Ray
Fernandez, M.D., the medical examiner for Nueces County, testified that he
performed the autopsy on Tamgumay.  The cause of his death was blunt chest and
abdominal trauma; these injuries were consistent with crushing from vehicle
tires.  Some of the injuries resulted from the initial impact whereas others
were from being run over by a vehicle.  Tamgumay was hit with enough force to
lift him out of his shoes.  Dr. Fernandez matched the injuries to the photos of
the damaged Suburban.  He opined that at time of impact, the Suburban was going
between twenty-five to forty miles per hour.

            Abel
Cantu, Cantu’s father, testified that he originally found and helped Serna
purchase the Suburban.  However, he testified that between the time of
purchase, January 11, 2006, and the date of the incident, April 6, 2006, the
Suburban was stolen from an H.E.B. grocery parking lot.  When the Suburban was
returned, the steering did not function properly.

II. 
Sufficiency of the Evidence

A.        Applicable
Law

            By
his first issue, Cantu challenges the legal sufficiency of the evidence to
support his conviction on all charges.  Our sufficiency review must be under “a
rigorous and proper application” of the Jackson standard of review.  See
Brooks v. State, 323 S.W.3d 893, 906 (Tex. Crim. App. 2010).  Under this
standard, “the relevant question is whether, after viewing the evidence in the
light most favorable to the prosecution, any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.”  Jackson
v. Virginia, 443 U.S. 307, 319 (1979); see Brooks, 323 S.W.3d at 902
n.19.  “[T]he fact-finder’s role as weigher of the evidence is preserved
through a legal conclusion that upon judicial review all of the evidence
is to be considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see also Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979) (“The
jury, in all cases, is the exclusive judge of facts proved, and the weight to
be given to the testimony . . . .”); Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”).

            Sufficiency
of the evidence is measured by the elements of the offense as defined by a
hypothetically correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  Under a hypothetically correct jury charge, in a
murder case, the State was required to prove beyond a reasonable doubt that Cantu
intentionally or knowingly caused the death of an individual.  See Tex. Penal Code Ann. § 19.02.  In
the aggravated assault cases, the State was required to prove beyond a
reasonable doubt that Cantu intentionally, knowingly, or recklessly caused
bodily injury to another and used a deadly weapon during the commission of the
assault.  Id. §§ 22.01(a)(1), 22.02(a)(2).

A
defendant’s intent may be inferred from his words, acts, and conduct.  Patrick
v. State, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995).  “Intent and
knowledge are fact questions for the jury, and are almost always proven through
evidence of the circumstances surrounding the crime.”  Robles v. State,
664 S.W.2d 91, 94 (Tex. Crim. App. 1984)); see Manrique v. State, 994
S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J., concurring). 

B.        Analysis

Cantu
argues that he was trying to avoid an altercation by leaving the premises and
that he was assaulted after he returned but when he was trying to get away. 
However, the testimony and evidence contradict this argument.  Serna’s
testimony shows that Cantu participated in the argument inside Hot Shots. 
Cantu also voluntarily returned to the premises after being told to leave.  It
was his passenger, Maurecio, who exited the vehicle and began the argument with
the other individuals.  Cantu then drove the Suburban at a dangerous speed
through a parking lot, hitting several vehicles and at least one person.  He returned
through the parking lot at least one more time, running over Tamgumay.  The
testimony from independent witnesses, Vera and Rodriguez, was that Cantu intentionally
drove towards the people and did not try to avoid the victims or vehicles.  The
damage to the vehicles was significant, and the testimony from the medical
examiner, Dr. Fernandez, indicated that Cantu hit the victims hard enough to
lift them from their shoes.  

Though
some of this evidence was contradicted, it was within the province of the jury
to resolve any such questions, as the jury is the sole judge of the credibility
of all of the testimony.  See Wesbrook, 29 S.W.3d at 111.  Additionally,
Cantu’s intent to kill and to cause bodily injury could be inferred from the
manner in which he drove the Suburban.  See Patrick, 906 S.W.2d at 487. 

Thus,
viewing the evidence in the light most favorable to the prosecution, we find
that a rational trier of fact could have found the essential elements of murder
and aggravated assault beyond a reasonable doubt.  See Jackson, 443 U.S.
at 319; Brooks, 323 S.W.3d at 902 n. 19; Tex.
Penal Code Ann. §§ 29.02, 29.03(a).  Therefore, the evidence was
sufficient to support Cantu’s conviction and we overrule his first issue.

III. 
Ineffective Assistance of Counsel

            By
his second issue, Cantu argues that he received ineffective assistance of
counsel because his trial counsel:  (1) advised him to waive a jury trial, (2)
failed to file a motion for new trial, (3) failed to argue for the inclusion of
lesser-included offenses in the jury charge, and (4) failed to obtain rulings
on pretrial motions.

A.        Applicable
Law

We
apply the two-pronged Strickland analysis to determine whether counsel’s
representation was so deficient that it violated a defendant’s constitutional
right to effective assistance of counsel.  Goodspeed v. State, 187
S.W.3d 390, 392 (Tex. Crim. App. 2005); Jaynes v. State, 216
S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.); see Strickland v.
Washington, 466 U.S. 668, 684 (1984).  An appellant claiming a Strickland
violation must establish that:  (1) “his attorney’s representation fell
below an objective standard of reasonableness, and (2) there is a reasonable
probability that, but for his attorney’s errors, the result of the proceeding
would have been different.”  Jaynes, 216 S.W.3d at 851; see
Strickland, 466 U.S. at 687.  

            We
afford great deference to trial counsel’s ability—“an appellant must overcome
the strong presumption that counsel’s conduct fell within the wide range of
reasonable professional assistance.”  Jaynes, 216 S.W.3d at 851.  The
appellant must prove both elements of the Strickland test by a
preponderance of the evidence.  Munoz v. State, 24 S.W.3d 427, 434 (Tex.
App.–Corpus Christi 2000, no pet.).  

B.      Analysis

1. 
Waiver of Jury

Cantu
argues that his trial counsel’s performance was deficient because he did not
practice in Nueces County and was not aware of the trial court’s tendency to
give lengthy sentences for violent offenses.  However, there is nothing in the
record to support this allegation.  Further, the record shows that Cantu’s
rights were explained to him, as he fully consented to the waiver of a jury
trial by voluntarily executing said waiver.  The waiver was explained to him in
open court, and Cantu was specifically advised that if he was found guilty, he
would not be eligible for probation because he waived a jury.  He also signed
an affidavit indicating he understood what he was signing.  Accordingly, there
is nothing in the record to show that there was deficient or prejudicial
behavior to indicate ineffective assistance of counsel on this issue.  Jaynes,
216 S.W.3d at 851; see Strickland, 466 U.S. at 687.  

2. 
Failure to File a Motion for New Trial 

Cantu
next argues that his counsel’s failure to file a motion for new trial
constituted ineffective assistance counsel.  Certain presumptions are made when
reviewing ineffective assistance of counsel claims that involve the failure to
file new trial motions.  First, when trial counsel did not withdraw and was not
replaced by new counsel prior to the deadline of filing new trial motions, a
rebuttable presumption exists that trial counsel continued to represent the
defendant during the time for filing a motion for new trial.  Smith v. State,
17 S.W.3d 660, 662 (Tex. Crim. App. 2000); Oldham v. State, 977 S.W.2d
354, 363 (Tex. Crim. App. 1998).  Second, if a motion for new trial is not
filed in a case, the rebuttable presumption is that the option was considered
by appellant’s counsel and rejected.  Oldham, 977 S.W.2d at 363.  A
third presumption arises if the appellant filed a pro se notice of appeal.  In
such cases, we consider the filing as evidence that the appellant was informed
of at least some of his appellate rights and then we presume that the appellant
was adequately counseled unless the record affirmatively displays otherwise. Id.

All
these presumptions apply to the procedural history of this case.  The judgment
was signed on November 29, 2007.  A pro se notice of appeal was filed on
December 5, 2007.  A motion to withdraw was filed on May 5, 2008, and a new
attorney appointed on May 8, 2008.  Cantu was represented during the time
period that a motion for new trial should have been filed.  See Tex. R. Civ. P. 329b (motions for new
trial must be filed prior to or within thirty days after the judgment is
signed).  Because the record contains no motion for new trial, we presume that
Cantu considered and rejected having his attorney file one.  Oldham, 977
S.W.2d at 363.  The record contains no contrary evidence.  Finally, because the
record shows that Cantu filed a timely pro se notice of appeal, we consider the
filing as evidence that he was informed of his appellate rights and presume
that he was adequately counseled.  Id.  Again, the record contains no
contrary evidence.  Under Smith and Oldham, we conclude that
Cantu failed to overcome the presumption that he had adequate counsel during
the post-trial window of time when a new trial motion could have been filed.  See
id.; Smith, 17 S.W.3d at 662.

3.  Failure to Seek a Lesser-Included Offense in the Charge

Cantu
further contends that he was denied effective assistance of counsel because his
counsel failed to request the lesser-included offense of either manslaughter or
criminally negligent homicide.  See Tex.
Penal Code Ann. §§ 19.04, 19.05 (West 2003).  A defendant is
entitled to an instruction on a lesser-included offense if two conditions are
satisfied.  Rousseau v. State, 855 S.W.2d 666, 672–73 (Tex. Crim. App. 
1993).  First, the lesser-included offense must be included within the proof
necessary to establish the offense charged.  Id. at 672.  Second, there
must be some evidence in the record that would permit a jury to rationally find
that, if the defendant is guilty, he is guilty of only the lesser offense.  Id.
at 673.  It is not enough that the jury may disbelieve crucial evidence
pertaining to the greater offense.  Skinner v. State, 956 S.W.2d 532,
543 (Tex. Crim. App. 1994).  Rather, there must be some evidence germane to a
lesser-included offense for the fact-finder to consider before an instruction
on a lesser-included offense is warranted.  Bignall v. State, 887 S.W.2d
21, 24 (Tex.Crim.App. 1994).

            In
this case, however, we need not address whether Cantu would have been entitled
to a lesser-included offense because it was within the reasonable zone of
professional conduct for Cantu’s counsel not to seek such an instruction.  For
example, his counsel may have made a strategic decision that Cantu would be
more likely to be acquitted all together if no lesser offense was given to the
jury.  Such strategic decisions, even if they fail to produce the desired
outcome, are not necessarily unreasonable.  Therefore, we cannot say that
Cantu’s attorney’s actions in this regard fell below an objective standard of
reasonableness.  See Jaynes, 216 S.W.3d at 851; Strickland, 466
U.S. at 687.  

4. 
Failure to Obtain Rulings on Pretrial Motions

Finally,
Cantu argues that his counsel was ineffective in failing to obtain rulings on
pretrial motions. However, he fails to show that any of the pretrial motions
were meritorious.  Jackson v. State, 973 S.W.2d 954, 957 (Tex. Crim.
App. 1998) (to prevail on ineffective assistance claim based on failure to file
a motion to suppress evidence, appellant must show motion would have been
granted); Roberson v. State, 852 S.W.2d 508, 510–11 (Tex. Crim. App.
1993) (appellant must show pretrial motions had merit and that rulings would
have changed the outcome of the case before counsel will be considered
ineffective in failing to assert the motion).  Without a showing that rulings
on the motions would have changed the outcome of the case, an appellant cannot
establish ineffective assistance of counsel for failure to obtain a ruling on
pretrial motions.  Magic v. State, 217 S.W.3d 66, 74 (Tex. App.—Houston
[1st Dist.] 2006, no pet.).

            The
only pretrial motion specifically argued by Cantu was a motion concerning prior
bad acts.  However, this testimony was only elicited in the punishment stage of
the trial.  There is no argument on whether the motion was meritorious or if
and how it would have changed the outcome of the case.  By simply arguing that
his counsel did not obtain rulings, Cantu fails to to establish ineffective
assistance of counsel.  Cantu’s second issue is overruled.

IV.  Bench
Trial

            In
his final issue, Cantu seems to argue that the trial court abused its
discretion by allowing him to proceed with a bench trial and not taking time
between evidence and making his ruling.

            Article
1.13(a) of the Texas Code of Criminal Procedure provides that a criminal
defendant may waive the right of trial by jury, upon entering a plea, but
requires that the waiver be made in person by the defendant in writing in open
court with the consent and approval of the court and the approval of the attorney
representing the State.  Tex.  Code Crim.
Proc. Ann. art. 1.13(a)
(West 2005).  The provision
further provides that the trial court’s consent and approval of the waiver must
be entered of record on the minutes of the court and the approval of the State’s
attorney must be in writing, signed, and filed in the papers of the cause
before the defendant enters his plea.  Id.  The
requirements of this article were followed by the trial court.  No further
admonishments were required, and accordingly, there was no abuse of discretion.


            Additionally,
there was no abuse of discretion in the timing of the trial court’s ruling. 
The trial court was present throughout the testimony of all the witnesses and
the introduction of all the evidence.  The trial court need not take any
further time to review the evidence at the punishment stage when he was the fact-finder
in the guilt/innocence phase.  Cantu cited no authority, and we find none, in
support of the argument that additional review of the evidence must occur
between a trial court’s finding of guilt and its determination of punishment. 
Cantu’s third issue is overruled.

V.  Conclusion

            Having
overruled all of Cantu’s issues on appeal, we affirm the trial court’s
judgment.

 

________________________

GINA
M. BENAVIDES,

Justice

 

Do not publish.

Tex. R. App.
P. 47.2 (b).

 

Delivered and filed the

30th day of August, 2011.