

# NUMBER 13-14-00512-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTOPHER MARTINEZ,                                                 Appellant,

v.

THE STATE OF TEXAS,                                                Appellee.

### On appeal from the 214th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides and Perkes
### Memorandum Opinion by Justice Garza

Appellant Christopher Martinez was convicted of criminal mischief causing more than $1,500 but less than $20,000 in damage, a state jail felony. *See* TEX. PENAL CODE ANN. § 28.03(a), (b)(4)(A) (West, Westlaw through 2013 3d C.S.). On appeal, he argues that the evidence was insufficient to support his conviction and that his trial counsel provided ineffective assistance. We affirm.

## I. BACKGROUND

Martinez was accused of slashing the tires of a vehicle belonging to Ruben Barrera on May 11, 2014. Gabriel Leal testified he was employed as a bouncer at El Dorado, a bar in Corpus Christi, on that date. According to Leal, "[t]wo individuals were brought out twice because of verbal altercations inside the bar" that night. Leal identified Martinez as one of the individuals. Leal stated that he asked Martinez's brother to leave the bar, and that Martinez left at the same time as his brother. When Martinez's brother "mentioned that he was going to go get a gun and return back to the bar," Leal notified his manager, who contacted the police. Leal saw that the two men "left the bar to the left," but he did not maintain visual contact with the two men. "About two minutes later," Leal walked outside "to look for them to make sure they didn't return . . . ." Leal started looking inside the cars that were parked in the parking lot. Leal testified that he then "looked further down the road" and "saw the individual damaging a vehicle while the other one was parked in the car." He elaborated that Martinez was "stabbing the tire" of a Hummer while Martinez's brother sat inside his vehicle.

According to Leal, the area where the Hummer was situated was illuminated and nothing was blocking his view of Martinez. However, he conceded that Martinez had his back toward him when he observed him damaging the tire. Leal stated that, about ten or fifteen minutes later, he was asked by police to come to Entourage, another bar a short distance away, to identify who he saw damaging the tire. He knew Martinez was the one who damaged the tire because he "was wearing the same attire that I saw him wearing when he came into the bar."

On cross-examination, Leal stated that the El Dorado parking lot was crowded that

night. He was standing "[a] good hundred yards" from where the Hummer was situated. When asked whether he "personally" saw Martinez slashing the tires, Leal replied: "I just saw a forward and backward motion. I don't know what he did to the vehicle or to the tire. I was not there personally right by him."

Casey Henry, a Corpus Christi police officer, testified that he responded to a disturbance at El Dorado. He asked the bouncer what had happened, and the bouncer explained "that he observed a gentleman come out and the tires were slashed on a Hummer, and then he saw them leave in a white Mustang with a tan convertible top." Police located the white Mustang a short distance away in the parking lot of Entourage. When Henry arrived at the scene, he removed Martinez from the passenger side of the vehicle, patted him down, and found a knife in Martinez's right pocket. The knife was entered into evidence. On cross-examination, Henry acknowledged that the knife was not tested for fingerprints, and that he did not observe any "tire residue" on the knife. A portion of a video recording of the traffic stop at Entourage and subsequent events from Henry's patrol car was played for the jury and entered into evidence without objection.

Ruben Barrera testified that he and his Hummer were at El Dorado on the night in question. After the bouncer told him that he needed to go outside, Barrera noticed that all four tires on his vehicle had been slashed. Additionally, there was a "dent on the window seal." According to Barrera, the dent was not there before he went into El Dorado that evening. He stated it cost "over three thousand dollars" to repair the vehicle, and that he paid a $495 deductible to his insurance company. Barrera testified that he has never met Martinez.

Richard Gutierrez, a claims adjuster employed by Progressive Insurance, testified

that he estimated it would cost $493.44 to replace each tire. He testified that he believed the tires "were in excess of 20 inches" in size and that they were the "kind of those off-road kind of souped up tires that you would see, like, on a vehicle with a lift kit." State's Exhibit 7, a written estimate prepared by Gutierrez, listed under "Estimate Totals" the figures of $2,463.55 for parts, $716 for labor, and $349.86 for "additional costs."

Martinez's aunt, Juanita Rangel, testified in his defense that she was at El Dorado that night, that she saw Martinez and his brother leave the bar and get into their car, and that she did not see them destroy or slash anything.

The jury convicted Martinez as charged, and after hearing evidence on punishment, the trial court sentenced him to fifteen months in state jail. The judgment of conviction also requires Martinez to pay $495 in restitution to Barrera and $554 in court costs. This appeal followed.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Martinez contends that the evidence was insufficient to support his conviction. In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214

S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State,* 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* A hypothetically correct jury charge in this case would state that Martinez is guilty of the charged offense if he intentionally or knowingly cut the tires of Barrera's vehicle without the effective consent of Barrera, thereby causing pecuniary loss in the amount of $1,500 or more but less than $20,000. *See* TEX. PENAL CODE ANN. § 28.03(a), (b)(4)(A).

Martinez does not dispute that the evidence supported the jury's implicit findings as to the dollar value of damage done to the Hummer and as to the lack of effective consent of Barrera. Instead, he argues that (1) "[n]o one saw the condition of the Hummer before [Leal] saw [Martinez] next to it," (2) "there was never any testimony about residue on the knife or whether the knife was capable of causing the damage to the tires," and (3) there was no evidence of any motive Martinez may have had to damage Barrera's property. We agree with these individual propositions; however, we disagree that the evidence was insufficient to support the conviction.

5

First, Martinez is correct that there was no testimony establishing the condition of the Hummer's tires prior to the time Martinez was seen next to them. However, Barrera appeared to suggest that he drove his Hummer to El Dorado that night,[1] and the jury could have reasonably inferred from this fact that the tires were intact prior to Leal's observation. *See Hooper*, 214 S.W.3d at 13. Additionally, Leal testified that he observed Martinez "damaging" the vehicle and "stabbing" its tire. Although Leal admitted he was "[a] good hundred yards away" from the Hummer at the time, he stated that the area was illuminated and his view was not blocked. Leal later conceded on cross-examination that he "just saw a forward and backward motion" and he did not "know what he did to the vehicle or to the tire" because he "was not there personally right by him." However, the jury was entitled to believe his earlier testimony. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008) ("Because the jury is the sole judge of a witness's credibility, and the weight to be given the testimony, it may choose to believe some testimony and disbelieve other testimony.").

Second, Martinez is correct that there was no evidence that the knife found in his pocket contained any residue left by the tires, and there was no testimony that the knife was capable of causing the damage to the tires. However, it is undisputed that Martinez was, in fact, in possession of a knife when police stopped him and his brother in their vehicle; and, as noted, Leal testified that he observed Martinez stabbing the tire shortly before Martinez was found with the knife. Even in the absence of any direct testimony that this particular knife was capable of causing the observed damage, the jury could

---

[1] When the prosecutor asked Barrerra "did you and your Hummer go to [El Dorado] that night," Barrera replied "Yes."

have reasonably made that inference because Leal observed Martinez making a "back-and-forth swinging motion" next to the Hummer a short time before Martinez was found with a knife and the tires were found to be slashed.

Finally, Martinez is also correct that there was no evidence of any motive that he may have had for damaging Barrera's property. But motive is not an element of criminal mischief. *See* TEX. PENAL CODE ANN. § 28.03. Accordingly, the absence of any motive evidence does not render the evidence insufficient to support the verdict. *See Hacker*, 389 S.W.3d at 865 (noting that only the "essential elements of the crime" are considered in a sufficiency analysis).

Viewing all of the evidence in the light most favorable to the verdict, we find that a rational juror could have found the essential elements of the offense beyond a reasonable doubt. *See id.* Martinez's first issue is overruled.

## B. Ineffective Assistance of Counsel

By his second issue, Martinez argues that his trial counsel provided ineffective assistance, thereby depriving him of his Sixth Amendment right to counsel, when counsel failed to seek suppression of certain statements Martinez made to police. *See* U.S. CONST. amend. VI.

To obtain a reversal of a conviction for ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient performance means that 'counsel made errors so serious that

7

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Ex parte Napper*, 322 S.W.3d 202, 246 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 687).

The appellant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). He must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.—Corpus Christi 2006, no pet.). A reviewing court will not second-guess legitimate tactical decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008) (noting that, "unless there is a record sufficient to demonstrate that counsel's conduct was not the product of a strategic or tactical decision, a reviewing court should presume that trial counsel's performance was constitutionally adequate"). Counsel's effectiveness is judged by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 813; *Jaynes*, 216 S.W.3d at 851.

Martinez appears to argue that his trial counsel erred by failing to object to the admission and publication to the jury of part of a video recording from Henry's patrol car, in which Martinez was asked whether he had been to El Dorado and in which he admitted that he has a pocket knife. He claims that the statements were inadmissible because they were made as a result of a custodial interrogation and he was not given *Miranda* warnings before making them. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (West, Westlaw through 2013 3d C.S.); *Miranda v. Arizona*, 384 U.S. 436 (1966). In arguing that

8

he was prejudiced by the admission of this evidence, Martinez notes that the prosecutor referred to his statement regarding the knife in her closing argument.[2] He also asserts that, "[i]n addition to the incriminatory comments, the jury was prejudiced by the intoxicated appearance of [Martinez], his attempts to foist blame on his brother being 'the crazy one,['] and the admission of being involved in altercations at both El Dorado and Entourage."

Even assuming that the video evidence was inadmissible, we cannot conclude that Martinez's trial counsel was ineffective in failing to lodge an objection thereto. An allegation of ineffectiveness must be firmly founded in the record; that is, the record must affirmatively demonstrate the alleged ineffectiveness. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002); *Thompson*, 9 S.W.3d at 814 n.6. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

Here, Martinez did not file a motion for new trial asserting ineffective assistance; therefore, there is nothing in the record establishing why his trial counsel decided not to object.[3] Martinez contends that "[t]here can be no sound trial strategy in allowing

---

[2] In her closing argument, the prosecutor remarked: "[Defense counsel] said that someone could have put [the knife] in [Martinez's] right pocket. There's absolutely no evidence of that, no testimony of that. In fact, [Martinez] in the back seat of the patrol car admitted that he has a pocket knife to open steaks at work."

[3] We note that challenges requiring development of a record to substantiate a claim, such as ineffective assistance of counsel, may be raised in an application for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West, Westlaw through 2013 3rd C.S.); *Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001).

incriminatory comments from the accused to be admitted to the jury," but we disagree. First, the allegedly "incriminatory" aspects of the video were established by other evidence at trial—in particular, Leal and Rangel testified that Martinez was present at El Dorado that night, and Henry testified that he discovered the knife in Martinez's pocket. Second, counsel may have decided not to object to the approximately four-minute-long video excerpt on legitimate strategic grounds; in particular, he may have sought to avoid directing the jury's attention to the video, or he may have believed that the video portrayed Martinez in a sympathetic light. Without any evidence in the record as to the reasons for counsel's actions, we cannot speculate as to whether the decision was actually based on sound legal strategy. We can, however, state with certainty that counsel's decision was not "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392.

Because Martinez has failed to overcome the strong presumption that his trial counsel's conduct fell within the wide range of reasonable professional assistance, his second issue is overruled. *See Thompson*, 9 S.W.3d at 813; *see also Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851.

### III. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
4th day of June, 2015.